### STIMPSON COMPUTING SCALE CO. v. W. F. STIMPSON CO. et al.

#### (Circuit Court of Appeals, Sixth Circuit.  November 7, 1900.)

#### No. 873.

1. PATENTS—CONSTRUCTION OF LICENSE—RIGHTS OF LICENSEE AFTER TERMINATION.

A license to manufacture a computing scale under a patent contained a provision that the licensees should "have the right to determine this contract, and their obligation thereunder, by giving six months' notice in writing to said first party of their intention to discontinue the manufacture and sale of such scales under this contract." Held, that the effect of such notice was merely to terminate the contract relations between the parties, and that the provision did not impose upon the licensees any duty, after such termination, to cease the manufacture of the scale they had theretofore made and sold under the license, but left them with the same right a stranger would have to dispute the title or right of the former licensor.

2. SAME.

The right of the licensees to terminate the contract and surrender the license, if it existed, was purely one derived from the terms of the contract itself, and the legality of their action in exercising such right cannot be affected by the motives with which they acted, and especially such motives could not affect their rights after the license had been surrendered and the surrender accepted.

3. SAME—CONTINUED USE OF PATENTEE'S NAME—INJUNCTION.

Where a manufacturer of an article under a license from a patentee avails itself of a provision of the contract to terminate the same and surrender the license, but continues to manufacture and sell the same article, it no longer has the right, as against the patentee or a subsequent licensee, to use the name of the patentee, in connection with its goods subsequently manufactured, in such way as to lead the public to understand that they are still made under his patent, and such use may be enjoined.

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

This is an appeal from an order granting a preliminary injunction upon the cross bill of the appellees. A brief account of the matters on which the controversy between the parties arose is as follows:

Walter F. Stimpson, one of the appellees, on the 31st of May, 1895, having filed an application in the patent office for a patent covering an invention which he claimed to have made of improvements in computing scales, which was subsequently granted, entered into a contract involving the use of the expected patent with the Stimpson Computing Scale Company, a corporation organized under the laws of the state of Michigan, for the purpose of manufacturing and selling such scales, and located at Tecumseh, Mich. The license was for the term of the patent, and provided for the payment of a royalty upon the scales which should be manufactured and sold. There was a condition in the contract, however, for an abandonment thereof and a surrender of the license, the clause containing it being as follows: "Further, that the party of the second part shall have the right to determine this contract and their obligations thereunder in the event that it or its agents are estopped by process of law from the manufacture and sale of said improvements at the conclusion

of a properly contested suit, or by giving six months' notice in writing to said first party of their intention to discontinue the manufacture and sale of such scales under this contract." After having been engaged in business for a time, the Michigan corporators, with others, organized a corporation with the same name, under the laws of Indiana, and changed the place of business to Elkhart, in the latter state, and, with the concurrence of Stimpson, assigned to the new company all the rights and privileges which the first-named company had acquired under the contract and license above mentioned, the assignee assuming all the obligations thereof. This was some time in the year 1896. The new company continued and enlarged the business. After having for a while manufactured their scales under the patent in a form of construction intended by it, as was supposed, which form, for convenience, may be called "A," another form was adopted, which may be called "B." This appears to have been done with the assent of Stimpson, and both parties, for a considerable time, at least, assumed and proceeded upon the assumption that form B was one within the scope of the patent. Both forms were called and branded "Stimpson's Computing Scale," or, in some cases, "Stimpson Grocer's Computing Scale," and were sold by those names. Rival manufacturers of computing scales constructed under other patents, which covered inventions regarded as endangering the validity of the Stimpson patent, embarrassed the business of the company to some extent, and upon an assignment of that and other reasons, such as that the manufacture had become unprofitable, the company notified Stimpson of its election to abandon the contract. The notification was by a letter, of which the following is a copy:

"To Walter F. Stimpson, Detroit, Mich.—Dear Sir: Please take notice that we intend to discontinue, six months after you receive this notice, the manufacture and sale of scales under a contract made the 31st day of May, A. D. 1895, by and between yourself, as party of the first part, and the Stimpson Computing Scale Company of Tecumseh, Mich., as party of the second part. Witness our hand and seal this 6th day of March, 1899.

"Stimpson Computing Scale Co.,
"By Mell Barnes, Secretary.
"[Seal.] Edwin Finn, General Manager."

The receipt of this notice was acknowledged by Stimpson on the following day. Thereupon Stimpson associated other parties with him, and granted a license to the associates of the same scope and effect as that formerly held by the appellant. These persons, including Stimpson, shortly after organized a Michigan corporation, "The W. F. Stimpson Company," for the manufacture of computing scales. The Elkhart company continued to make and sell computing scales. Some of those made and sold were of the form B, being one of the forms—the later one—employed while that company operated under the license as above stated. They branded their product "The Stimpson Computing Scale," and sold it to the trade by that name. Stimpson's new Michigan company did the same, each party at the same time claiming it as a trade name or label exclusively their own, and each insisting that the other was violating its right thereto. In this state of affairs, the Elkhart company, the present appellant, filed its bill in the circuit court for the Eastern district of Michigan, against the appellees, to restrain their appropriation and use of the trade name "The Stimpson Computing Scale." The appellees answered, and filed a cross bill praying for like relief against the complainant in the original bill. The latter filed an answer, and on the pleadings and affidavits a motion was made for a preliminary injunction. The result was that the court granted the motion of complainants in the cross bill, and ordered a preliminary injunction against the original complainant. The effective part of the order was as follows: "It is ordered that the cross defendant, Stimpson Computing Scale Company, its officers, agents, servants, attorneys, workmen, and successors, be restrained until the further order of this court from continuing the manufacture and sale of the computing scale heretofore made and sold by said cross defendant under and by virtue of a certain license contract entered into May 31, 1895, between the cross complainant Walter F. Stimpson and the Stimpson Computing Scale Company, and which contract was surrendered to the said Walter F. Stimpson by said cross defendant on September 7, 1899, said scale

so manufactured and sold by said cross defendant under said license contract being known as the 'Stimpson Computing Scale.' This order is not to be construed, however, as restraining the cross defendant from making and selling any computing scale not within the scope and contemplation of said license contract and the Stimpson patent. It is further ordered that said cross defendant, its officers, agents, etc., be restrained, until further order of this court, from continuing the use of the names 'Stimpson,' 'Stimpson Computing Scale,' and 'Stimpson Grocer's Computing Scale,' in connection with the manufacture and sale of computing scales made and sold by said cross defendant, in such a way as to indicate that the scales so made and sold by said cross defendant are the scales heretofore made and sold by said cross defendant under said license contract and patent." The original complainant has appealed from the granting of the order for an injunction on the cross bill.

John M. Van Fleet, for appellant.

Edward Rector, De Forest Paine, and James Whittemore, for appellees.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

SEVERENS, Circuit Judge, having made the foregoing statement of the facts, delivered the opinion of the court.

The first question to which our attention should be directed is that relating to the construction of the contract and license formerly held by the appellant from Stimpson, and more particularly to the interpretation and effect to be given to the clause which declared that the party of the second part (the appellant) should "have the right to determine this contract, and their obligation thereunder, by giving six months' notice in writing to said first party [Stimpson] of their intention to discontinue the manufacture and sale of such scales under this contract." An ingenious and labored effort is made in the brief for the appellees in support of the proposition that this provision is to be construed as meaning that the contract could only be determined by the appellant in case it should conclude to abandon the business of making and selling computing scales like these, and hence, if it should give notice of its election to abandon the contract, it was bound to discontinue the business. But we do not so interpret this stipulation. We think it gave the licensee the right to determine the contract by giving the prescribed notice of its intention not to proceed further under the contract after the time stated in the notice should expire. The manufacture and sale of such scales "under this contract" would then cease. Effect must be given to all the language of a contract where possible, and we see no difficulty in applying this rule of construction here. There was nothing in the contract which imposed a further disability upon either party after it should have been brought to an end by the exercise of a right reserved therein. After the termination of a license, the parties are freed from any estoppel resting upon them while in their former relation. The licensee may dispute the title or right of the former licensor to the same extent as a stranger might. The estoppel is raised for the protection of the interest which the assignor or licensor professed to convey, and has no further office. Manufacturing Co. v. Robbins, 75 Fed. 17, 21 C. C. A. 198; Noonan v. Athletic Club Co., 99 Fed. 90, 39 C. C. A. 426; Smith v. Ridgely, 103 Fed. 875.

Much space has been given in the appellees' brief and pains in the argument to the discussion of the alleged bad faith and disingenuous

conduct of the appellant in breaking off the contract; but we are unable to see to what end. The right to abandon the contract and surrender the license, if it existed, was not affected by the motives with which it was exercised. It was a right resting wholly in contract, and the question of good faith is quite irrelevant to the deduction of the legal consequences flowing from the act of the party in determining his course. Besides all this, the surrender was accepted and the license transferred to other parties. It is no purpose of the present suit to set aside or declare null the abandonment.

There is nothing in the record to justify the conclusion that the appellant promised Stimpson's new company that it would discontinue the manufacture of the scales which it has since been making. Whether it had the right to continue such manufacture is the principal question presently to be considered.

This brings us to the ultimate question just indicated, which is, what were the relative rights of the parties to the use of the trade names, "The Stimpson Computing Scale," and "The Stimpson Grocer's Computing Scale," put upon their products? It appears that the name of Stimpson was embodied in the appellant's corporate name at his instance, and there is therefore some reason to doubt whether he could require that its use in that connection should be discontinued. It is not necessary, however, for us to determine that question. But the use of his name as a label for the scales, or in any such way as to denote that they were manufactured under his patent, involves another question. No doubt one may give to another such right to the use of his own name as to preclude him from using it himself, when the consequence would be to appropriate the good will acquired by the other party by the use of it, and the continued use is necessary to the preservation of the benefit of the good will thus acquired.

But we do not think this rule is applicable here. During the time when the appellant and Stimpson were doing business under the license it was known that the business was liable to come to an end at any time by the act of the licensee, and it must have been understood that upon the termination of it Stimpson might employ his patent either by his own use or by granting a license to use it, and it was not reasonable to expect that he or those using the license would be debarred from using Stimpson's name to characterize their product as made under his patent. If this were so, there must be a corresponding obligation on the part of the other party to the contract to refrain, after the termination of its license, from longer using the name of Stimpson upon its goods in such a way as to lead the public to understand that they were made under his patent. These consequences must have been anticipated. The appellant knew that it could only use Stimpson's name to distinguish its goods and support the good will of its trade, so long as they continued to operate under his patent. The validity of the patent is not in issue here. But the parties made their contract and prosecuted it upon the assumption of its validity, and their stipulations should be construed as made upon that assumption.

It follows that the appellants have not the right to use Stimpson's name in describing their scales, whether by label or otherwise, in

such a way as to denote that they still manufacture them under the specifications of his patent. By the use of the name "The Stimpson Computing Scale," or "The Stimpson Grocer's Computing Scale," the public would in all probability understand they were made in accordance with the mode of construction familiar to them from the use of scales made under his patent. He and his licensee are entitled to be protected against this invasion of their right. Whether his patent be good or bad, no one has the right to claim the privilege of making and selling his goods as though made under it, and thereby depriving the owner of such credit as belongs to it, and inducing the public to suppose that the seller has title to the invention supposed to be embodied in the subject of the sale. The phraseology of the order appealed from indicates that the circuit court proceeded upon the ground that the appellant was bound to discontinue the manufacture of such scales as it made under its contract with Stimpson in consequence of the stipulation that the licensee might surrender the license when it should determine that it would not go on with the contract,—a construction with which we do not agree. Counsel for the appellees disclaims the purpose of obtaining an adjudication respecting the validity of the patent, and it is therefore improper that an injunction should go to restrain the infringement of the patent. That being out of the case, we can find no ground on which to restrain the manufacture and sale by the appellants of the articles mentioned. It may expose the appellant to a suit for infringement, but that, as we have said, is foreign to the purpose of the present suit. Aside from the patent, there is nothing to prevent the appellant from selling the same kind of goods as it sold during the term of the contract. We therefore think that part of the order is erroneous, and should be reversed.

The other part of the order is to enjoin the use of the names "Stimpson," "Stimpson Computing Scale," and "Stimpson Grocer's Computing Scale" in such a way as to indicate that the scales made by the appellant were made under said "license contract and patent." This does not conform to the views we have expressed; for we do not think the appellant is estopped to deny, having regard to future manufacture, that the scales then made were, in law and fact, subject to the patent. This part of the order should be modified so as to restrain the use of the names mentioned in such a way as to indicate that the scales made and sold by the appellant were made under the Stimpson patent, or in substantial accordance with the form thereof. As thus modified, this part of the order will be affirmed. It is ordered accordingly.