PLANTEN v. GEDNEY.

(Circuit Court of Appeals, Second Circuit. June 22, 1915.)

No. 307.

1. TRADE-MARKS AND TRADE-NAMES ⊙➔59—COLORABLE IMITATION OF TRADE-MARKS.

The trade-mark, "Gedney's C. & C. (Black) Capsules," is a colorable imitation of the trade-mark, "Planten's C. & C. or Black Capsules."

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 68–72; Dec. Dig. ⊙➔59.

Imitation or simulation of trade-mark or trade-name as unfair competition, see note to John H. Rice & Co. v. Redlich Mfg. Co., 122 C. C. A. 447.]

2. TRADE-MARKS AND TRADE-NAMES ⊙➔6—NAMES AND MARKS SUBJECT TO APPROPRIATION—DESCRIPTIVE WORDS OR LETTERS.

The letters, "C. & C." used in connection with capsules intended for a certain class of diseases, either alone or in connection with the name of the manufacturer, used exclusively by the manufacturer as a trade-mark for 10 years prior to Act Feb. 20, 1905, c. 592, 33 Stat. 724, providing for the registration of trade-marks, are a valid trade-mark, though at common law the descriptiveness of the letters "C. & C." might make it invalid, in view of the fact that for many years the letters have been used by manufacturers of and dealers in drugs as indicating particular drugs, for it was the purpose of the act to protect descriptive trade-marks used as such for 10 years prior to 1905.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 10; Dec. Dig. ⊙➔6.]

3. TRADE-MARKS AND TRADE-NAMES ⊙➔93—REGISTRATION—VALIDITY.

A registration by complainant of a trade-mark, "Planten's C. & C. or Black Capsules," was secured in 1906 ex parte after notice in the Of-

ficial Gazette. As early as 1890, complainant or his predecessor applied to his boxes the words "Planten's C. & C. or Black Capsules (Trade-Mark)," and also similarly applied the same to the wrappers of packages containing several boxes, and continuously applied the mark ever since, and extensively advertised the product from about 1890. No use by defendant, or his predecessor, of the "C. & C.," or the "Gedney's C. & C. or Black Capsules," as a trade-mark, was shown until after date of registration. For many years, including the period from February 20, 1895, to February 20, 1905, there was inclosed in defendant's boxes a folded leaflet, headed "Gedney's Capsules." In the course of the description of the product, the term "Gedney's C. & C. Capsules," and the term "C. & C.," and the word "Black" appeared, and also the term "Gedney's C. & C. (Black) Capsules." *Held* to justify a finding that complainant's trade-mark was validly registered under the act of 1905, and that defendant infringed it, entitling complainant to relief under section 16 of the act (section 9501, Comp. St. 1913).

, [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 104–106; Dec. Dig. ☜93.]

4. COURTS ☜360—UNFAIR TRADING—JURISDICTION OF FEDERAL COURTS.

The United States District Court has no jurisdiction of a suit for unfair trading, where the parties are not citizens of different states.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 847, 850; Dec. Dig. ☜300.]

Coxe, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree dismissing the bill in a suit for infringement of two trade-marks, registered under the act of February 20, 1905. The opinion of the District Judge will be found in 221 Fed. 281.

S. J. Cox, of New York City, for appellant.

May & Jacobson, of New York City (I. N. Jacobson, of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The first registration, No. 51,356, registered April 10, 1906, is of a "trade-mark for filled gelatin capsules," and consists of the words and characters "Planten's C. & C. or Black Capsules." The statement declares that the class of merchandise to which this trade-mark is appropriated is capsules, and the particular description of goods on which it is used is filled gelatin capsules. It also states that the trade-mark is usually displayed upon printed labels of various kinds intended for application to boxes containing such capsules and to packages of such boxes. The second registration, No. 66,108, registered November 12, 1907, is of a "trade-mark for certain medicine * * * remedy for the treatment of chronic and acute gonorrhea" and other enumerated diseases. It is shown in the accompanying drawing as consisting of the letters "C. & C." printed in one color on a field of another color. The statement declares that it "is applied or affixed to the goods by providing boxes containing the goods in gelatin capsules with labels and packages of such boxes with wrapper labels on each of which the trade-mark is printed."

[1] The suit was begun June 24, 1914. It is not disputed that at and prior to that time defendant was offering for sale packages of boxes containing his gelatin filled capsules (inclosing the same two drugs) in a wrapper on which were printed the words and characters "Gedney's C. & C. (Black) Capsules." Until about two years before the beginning of the suit the inscription of defendant's wrapper did not contain the words last above quoted; the most prominent inscription was "Gedney's Capsules," accompanied with the statement that they contained "Balsam Copaiba and Oil of Cubebs." Under the decision of the Supreme Court in Thaddeus Davids Co. v. Davids, 233 U. S. 461, 34 Sup. Ct. 648, 58 L. Ed. 1046, and our decision in Warner v. Weiner, 214 Fed. 30, 130 C. C. A. 424, the trade-mark "Gedney's C. & C. (Black) Capsules" is a colorable imitation of "Planten's C. & C. or Black Capsules."

For very many years the letters "C. C." have been used by manufacturers and dealers in drugs as indicating Balsam Copaiba and Oil of Cubebs, just as the letters "C. S." have been used as an abbreviation of Cubebs and Sandal and "C. O." of Castor Oil. Also for many years purchasers of a remedy containing these ingredients have asked for it as "C. & C." It is therefore contended that the letters are descriptive and cannot be appropriated as an exclusive trade-mark by any one. It was on that ground that Judge Evans decided the case, and it is the principal matter in dispute here.

The act of 1905 was intended to crystallize the law as to trade-marks used in interstate commerce; the courts had been filled with cases presenting many questions not always harmoniously disposed of. Congress in this act, deals exhaustively with the subject. It provides that no future trade-mark shall be registered which is personal (giving the name of an individual), geographical, or descriptive. Wishing apparently not to destroy all existing rights which might have resulted from a "secondary meaning" having been acquired by words ordinarily geographic, descriptive, or what not, it provides that nothing in the act contained shall prevent the registration of any mark used by the applicant or his predecessors in foreign or interstate commerce when such mark was "in actual and exclusive use as a trade-mark of the applicant or his predecessors * * * for ten years next preceding the passage of this act"—i. e., for 10 years prior to February 24, 1905. Before a certificate can be issued the trade-mark must be published for 30 days in the Official Gazette, within which time any one may file objections. It will, of course, quite frequently happen that such published notice fails to reach some person interested, and therefore objections which the Patent Office might have considered fatal to the application are not presented. In consequence registration will sometimes be improvidently granted; the Office being misled as to the length in time of prior use, or as to its exclusive character. For such cases the act provides, in the thirteenth section, a remedy by application to the Commissioner of Patents for a cancellation of the registration. The remedy is full, fair, and summary, with appeal from examiner to Commissioner, and with no time limit for the application. It may be strongly argued that for an improvident registration this

remedy should be exclusive, leaving it for the tribunal, which had decided on insufficient evidence that there had been 10 full years exclusive use, to reach a different conclusion on fuller testimony. Many other defenses to a suit upon registered trade-mark can be disposed of only in a suit—title (as to which under section 16 registration is prima facie evidence), estoppel, license, laches, etc.; but it may be that Congress intended that as to the two questions whether prior use was for 10 full years and·was exclusive the Patent Office should decide. Such question of practice, however, need not be decided in this cause.

[2] The main defense relied on is that the letters "C. & C." alone or in combination with the maker's name cannot be held to be a valid trade-mark, because they are descriptive, indicating that the article covered by them is a compound, essentially, of cubebs and copaiba. The evidence indicates that these letters have been so understood in the trade and by some, possibly many, users for many years. But, as we understand the decision in the Davids Case, 233 U. S. 461, 34 Sup. Ct. 648, 58 L. Ed. 1046, that circumstance does not prevent their being registered as a valid trade-mark under this act, if they have been exclusively used as such by complainant for 10 years prior to 1905. It was one purpose of the act to protect just such a situation. · If the applicant satisfied the Patent Office that the conditions required in section 5 existed—10 years' exclusive use—he should get his registration, even though the mark were descriptive; and registration made his trade-mark a valid one, although at common law its descriptiveness might make it invalid.

[3] A further defense asserted is that the registration was obtained fraudulently. Judge Evans reached the conclusion that the evidence does not sustain this charge, and we fully concur with him. The registration was obtained ex parte, no one appearing to object in response to the notice published in the Official Gazette; defendant did not know that application was pending. He now contends:

(1) That complainant or his predecessors did not use the registered trademark, for 10 years prior to February 24, 1905.

(2) That, even though they did, defendant or his predecessors during the same period were using the same trade-mark, and therefore applicant's use was not exclusive. For which reasons it is contended that the registration was improvident and has no validity.

Not passing upon the proposition that these two grounds of objection should be first presented to the Commissioner of Patents upon an application to cancel, we have examined the testimony adduced in support of them.

(1) The evidence fully establishes the proposition that as early as 1890 complainant (or his predecessor) applied to his boxes in a prominent position, so printed and spaced as to strike the eye of an observer, the words "Planten's C. & C. or Black Capsules (Trade-Mark)," and also similarly applied the same to the wrappers of packages, containing several boxes. Also that he has so applied this mark ever since and has extensively advertised it from about 1890 to the beginning of the suit.

(2) No use by defendant or his predecessor of the "C. & C." or the "Gedney's C. & C. or Black Capsules" as a trade-mark on boxes or wrappers is shown until some time after the date of registration. It was shown that for many years

(including the period from February 20, 1895, to February 20, 1905) there was inclosed in defendant's boxes a folded leaflet, headed "Gedney's Capsules." It contains about 30 lines, describing his remedy, its uses and benefits, all in small type, except that whenever the words "Gedney's Capsules" appear (as they do seven times) they are printed in capitals. In the course of this description there appears the suggestion, also in small type: "When purchasing, ask for Gedney's C. & C. Capsules, better known as Gedney's Black Capsules." Three advertisements only containing the words "C. & C." and "Black" were proved. The first is in a price list of McKesson & Robbins, wholesale druggists. It contains the words in large full-faced black type "Gedney's Capsules," accompanied with a wood cut showing a man's head with a capsule marked "Gedney" between his lips and surrounded with a circular inclosed space containing the words "Trade-Mark." Below the words "Gedney's Capsules" is the statement in small type that "Gedney's C. & C. (Black) Capsules have a world-wide reputation for reliability and purity for the past sixty-four years." The second advertisement is in the price list for 1900 of the Houston Drug Company (of Texas), in which the description of the article is headed with the words—in large capitals—"Gedney's C. & C. (Black) Capsules." The third advertisement appeared in the 1903 price-list of Berry Demoville Company, wholesale druggists of Nashville, Tenn. In this also the description is headed, in large capitals, with the words "Gedney's C. & C. (Black) Capsules."

The evidence fails to satisfy us that during the 10-year period the defendant was undertaking to advise the consuming public, either by marks upon his boxes or wrappers, or by advertisements of a sort adapted to reach them, that the letters and characters "C. & C. (Black)" were a mark which would identify his goods. We are not persuaded that the Patent Office improvidently granted these registrations. The trade-marks thus registered are valid, they have been infringed, and complainant is entitled to the relief accorded to him by section 16 of the act of 1905.

[4] The complainant includes a charge of unfair trading. Since the parties are not citizens of different states, that part of the bill was correctly dismissed without prejudice.

The decree is reversed, with costs of appeal, and cause remanded, with instruction to decree in conformity with this opinion.

COXE, Circuit Judge, dissents.