### K–W IGNITION CO. et al. v. TEMCO ELECTRIC MOTOR CO.

(Circuit Court of Appeals, Sixth Circuit. June 8, 1917.)

No. 2934.

1. PATENTS ⊙═328—VALIDITY AND INFRINGEMENT—SHOCK ABSORBER.
   The Thompson patent, No. 1,072,791, for a shock-absorber for automobiles, while narrow, was not anticipated and is valid; also *held* infringed.

2. PATENTS ⊙═129—SUITS FOR INFRINGEMENT—DEFENSES—ESTOPPEL.
   A condition of a sales agency contract, binding the agent to recognize and respect all rights under the patent, is extinguished by the termination of the contract, and in a subsequent suit the agent may contest the validity of the patent.

3. COURTS ⊙═290—SUIT FOR INFRINGEMENT—JURISDICTION—UNFAIR COMPETITION.
   Where, in an infringement suit, the patent is held valid and infringed, a claim for unfair competition arising out of the infringement may be considered in the accounting of profits and damages, although the parties are citizens of the same state.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; John H. Clarke, Judge.

Suit in equity by the Temco Electric Motor Company against the K-W Ignition Company and Joseph A. Williams. Decree for complainant, and defendants appeal. Affirmed.

A. F. Kwis, of Cleveland, Ohio, and A. J. Hudson, of New York City, for appellants.

H. A. Toulmin, of Dayton, Ohio, for appellee.

Before WARRINGTON and KNAPPEN, Circuit Judges, and SATER, District Judge.

SATER, District Judge. · The defendants (appellants) seek a reversal of the decree of the District Court adjudging them infringers of the Thompson patent, No. 1,072,791, issued in 1913, of which the plaintiff (appellee) is the owner.

[1] The object of the patentee was to provide a shock-absorber which would make riding in a Ford automobile easy. He accomplished this by supplying a set of quickacting coiled springs in connection with the set of slowacting and friction-retarded leaf springs originally built into the vehicle. The compression and recoil of the two sets of springs occur at different times, in consequence of which their respective pulsations are not synchronous. .The result of this is that the vibrations which would otherwise be. transmitted to the frame of the vehicle are absorbed within the springs. The availability of the device

for use is such that the owner of a Ford automobile, without the services of a mechanic, and without disturbing the operation or construction of his car, may, with slight instruction, remove the usual hanger which supports each end of each leaf spring and insert the plaintiff's attachment in its stead. The absorber consists of a coiled or torsion spring inclosed in a cylindrical metal casing or hanger capable of an upward and downward sliding movement on a guide or stanchion whose lower end is bolted to the axle. The stanchion supports the torsion spring, limits the side movements of the leaf spring, and is provided at its upper end with a nut or stop which restricts the upward movement of the casing. Immediately surrounding the guide is a cylindrical collar, whose upward end broadens out after the fashion of a washer and rests on top of the coiled spring and against the inner side of the upper closed end of the casing. When a shock from the movement of the car is sustained, the lower end of the collar contacts with a washer resting on a platform or shelf on the guide at the lower end of the casing, which shelf limits the casing's downward movement. On the side of the casing next to the end of the leaf spring is an eye, through which a link passes connecting the leaf spring with the shock-absorber and tending to hold the casing at the upper end of the guide. The effect of the arrangement is such that the recoil of the torsion spring begins before the full effect of the shock to the wheels can be transmitted through the leaf spring to the body of the car and its occupants. Riding is thereby made easier.

The desirability of shock-absorbers has been such as to tempt many inventors to cultivate the field pertaining to that particular art, and, as is quite usual in patent cases, the defense of anticipation as well as of nonpatentability is interposed. The Williams device for a wagon spring, No. 203,863 (1878), which defendants' expert thinks most closely approaches that of the plaintiff, differs so radically as to prevent its adaptability to an automobile. The auxiliary spring, whether it be rubber or steel, is not mounted and cannot be mounted on or interposed between the axle and leaf spring, as is essentially necessary in the Thompson device, but is attached on its outer side to side bars extending about the length of the wagon bed and secured to and supported by the axles, which are remote from the spring, and is connected by a rod directly to the rather remote leaf spring below. As the side bars possess some degree of flexibility, a third spring element is also thus introduced. Haskins, whose patent, No. 330,023 (1885), is also relied on by defendants as anticipatory, distinguishes his spring arrangement from and claims an improvement on that of Williams. His purpose was to overcome in vehicles the motion or jolt caused by the movement of the horses. In his form, shown in Fig. 5, to which the defendants' expert directs special attention, the leaf spring connects immediately to the helical spring, which in turn is attached by a body loop to the platform or bed of the vehicle. The shock from the wheels passes through the leaf spring first. The coiled spring is not between the axle and the leaf spring, and no one suggests how, within the terms of the patent, a construction is permissible or possible thus to place it. The result which he obtains and his manner of obtaining it are not the

same or substantially the same as those secured and employed by Thompson. The Anger device, covered by patent No. 1,031,612 (1912), is unlike the plaintiff's, in that it is primarily built into the car and is not constructed as a separate or a separable part. His entire spring arrangement must be built and put in place at the factory— the axle which is split or separated into two parts being thus specially made in order to admit of the use of his mechanism. No guide is employed to support the spring, nor does the construction admit of the use of a guide, or of a variation even approximating the plaintiff's structure. The remoteness of the other alleged anticipatory patents is such that they need not be mentioned. The Haskins and Anger patents were cited against Thompson when his application was pending in the Patent Office, but were satisfactorily differentiated from his improvement. The Williams and the Haskins inventions were designed for use on horse-drawn vehicles long prior to the conception of the powerful, heavy, swift-moving automobile, and no one attempted to adapt them, or either of them, to vehicles of that kind. The merit and simplicity of the Thompson device were immediately recognized, and it promptly went into extensive use. Salesmen, before seeing it and without the use of any advertising matter, found many ready buyers. The demands of the trade exceeded the ability to supply it. Although its parts are old, they have been so brought together as to produce in a new way a better result than had been attained by anything that preceded it in the art. It is a narrow patent, but it involves invention and is valid.

[2] The defendant company was the plaintiff's exclusive sales agent. Their contract provided that the defendant company would not manufacture or endeavor to manufacture plaintiff's spring and would respect its patent rights then existing or thereafter acquired, and was terminable by mutual agreement. It proved to be highly profitable to both parties, but, a controversy having arisen between them regarding the price of the springs, it was terminated at the defendant company's instance. The above-mentioned prohibitory features perished along with the residue of the contract and the defense of nonpatentability may therefore be properly made. Dueber Watch Case Mfg. Co. v. Robbins, 75 Fed. 17, 26, 21 C. C. A. 198 (C. C. A. 6); Computing Scale Co. v. Stimpson Co., 104 Fed. 893, 895, 44 C. C. A. 241 (C. C. A. 6). Before the termination of the contract, the defendants, to avail themselves of the demand for plaintiff's device, made preparations for manufacturing and marketing a new shock-absorber strikingly like that of plaintiff, and shortly thereafter offered the same for sale. Its guide or stanchion is divided. At the top of the lower portion, which fits into the hole in the Ford axle, is a platform which serves substantially the purpose of the platform on the Thompson guide. An outside cylindrical cover may be used or not, as the manufacturer chooses; but, if used, it serves no purpose other than to inclose the coiled spring. The efficient casing or hanger which acts on the torsion spring is inside instead of outside of such spring and immediately surrounds the upper end of the upper part of the guide. The lower end of this portion of the guide is affixed to a link which connects it with the leaf

spring. Its upper end, to limit the upward movement of the spring, has a projection which fits into a cavity on the bottom of the cup-like formation which the hanger is made to assume. The hanger's cup-like top fits over the top of the coiled spring, and, when a shock is received by the wheels, produces precisely the same action on the spring as does the casing or hanger in the plaintiff's spring. The hangers in the two respective absorbers differ in form, but not in function. The springs in a Ford automobile equipped with defendants' device receive shocks in the same order, operate in the same manner, and produce the same results as those in a Ford car on which the plaintiff's springs are used.

[3] The defendants' product, which has the same general shape and size and bears the same general black enameling and gold label as the plaintiff's was offered to the same trade to which, and under the same name by which, the plaintiff's device had become known. The printed instructions for attaching defendants' shock-absorbers to a car were in the main a verbatim copy of those that had accompanied the plaintiff's device when put on the market. It would be idle to say that the plaintiff, keeping within the strict terms of its patent, could not put upon the market the same device that the defendants have been making. The plaintiff's patent being valid, the unfair competition feature arising out of the infringement, the subject-matter of the suit, can be cared for in the accounting for profits and damages, although the parties are citizens of the same district. Ludwigs v. Payson Mfg. Co., 206 Fed. 60, 65, 124 C. C. A. 194 (C. C. A. 7); U. S. Expansion Bolt Co. v. H. G. Kroncke Hardwood Co., 234 Fed. 868, 874, 148 C. C. A. 466 (C. C. A. 7); Leschen Rope Co. v. Broderick, 201 U. S. 166, 26 Sup. Ct. 425, 50 L. Ed. 710.

The judgment of the trial court is affirmed. Its further proceedings will be in accordance with the conclusion here reached.