## PINAUD, Inc., v. HUEBSCHMAN.

District Court, E. D. New York. January 30, 1928.

No. 2966.

1. **Trade-marks and trade-names and unfair competition** ⬦⟳57—**Unnecessary adoption of substantial part of plaintiff's trade-mark, by using name descriptive of plaintiff's goods, generally constitutes infringement.**

Unnecessary adoption of trade-mark, by use of mark identical with name derived from plaintiff's trade-mark which has been sufficiently descriptive of plaintiff's goods, is generally regarded as an infringement, where the adoption is of a substantial part of the mark.

2. **Trade-marks and trade-names and unfair competition** ⬦⟳57—**Defendant's subtractions from or additions to plaintiff's "trade-mark" proper will not void infringement, where sufficient imitation remains to create confusion.**

Neither subtractions from nor additions to a trade-mark proper will avoid infringement, when such imitation as is likely to lead to confusion still remains on defendant's use of part of identical trade-mark; "trade-mark" meaning distinctive mark of authenticity, by which products of particular manufacturers or merchants may be distinguished, consisting of symbols or words which point out distinctively the origin or ownership of the articles to which the mark is affixed.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Trade-Mark.]

3. **Courts** ⬦⟳351½—**If court's jurisdiction depends upon trade-mark violation, accompanying cause of action for unfair competition is properly dismissed, where separable and depending on proof of distinct facts.**

Where court has jurisdiction in suit for infringement of trade-mark and unfair competition solely by reason of trade-mark violation, damages are rarely allowed for aggravation pursuant to theory of unfair competition unless clearly inseparable from violation of trade-mark, and suit for unfair competition will be dismissed where separate allegations and proof are required to support it.

4. **Trade-marks and trade-names and unfair competition** ⬦⟳21—**Term "Lilas de France," used to describe plaintiff's toilet water, although primarily merely descriptive of extract, held valid trade-mark, where used over ten-year period before registration (Trade-Mark Act, § 5, as amended [15 USCA § 85]).**

Term "Lilas de France," used to describe plaintiff's toilet water for period of over ten years before registration, though words in their primary meaning are but description of the extract or perfume, constituted valid trade-mark, where registered under proviso of Trade-Mark Act, § 5, as amended (15 USCA § 85).

5. **Trade-marks and trade-names and unfair competition** ⬦⟳3(4)—**Term "A La Corbeille Fleurie" or "basket of flowers," used in connection with plaintiff's perfume, held valid trade-mark.**

Term "A la Corbeille Fleurie," or "basket of flowers," used in connection with plaintiff's perfume, held to constitute valid trade-mark, since not merely descriptive of the article but a distinctive mark.

6. **Trade-marks and trade-names and unfair competition** ⬦⟳97—**On discontinuance of infringement of trade-mark, plaintiff need not rely upon defendant's promises to avoid future infringement, where defendant still claims right to use name.**

Where infringement of trade-mark has been discontinued before bringing of suit, plaintiff is not obliged to rely upon mere promises of defendant to avoid infringement in future, provided it appears that defendant still claims right to use of trade-name.

7. **Trade-marks and trade-names and unfair competition** ⬦⟳97, 98—**Where defendant had voluntarily abandoned infringement of trade-mark, prior to commencement of suit, plaintiff was entitled to injunction without accounting for past use.**

Where, in suit for infringement of trade-mark, proof showed that defendant did not use mark at time of commencement of suit or subsequently thereto, and had voluntarily abandoned its use, plaintiff was entitled to injunction to prevent its future use, but not to an accounting for its use in the past.

8. **Trade-marks and trade-names and unfair competition** ⬦⟳4, 58—**Trade-mark representing spray of lilacs in connection with perfume held valid and infringed by defendant's representation of spray of lilacs in small vase (Trade-Mark Act, §§ 2, 5, as amended, and § 16 [15 USCA §§ 82, 85, 96]).**

Trade-mark No. 204,999, representing spray of lilacs in connection with plaintiff's perfume, held valid and infringed by defendant's mark representing spray of lilacs in small vase though no vase was used in connection with plaintiff's mark, under Trade-Mark Act, §§ 2, 5, as amended, and section 16 (15 USCA §§ 82, 85, 96), prohibiting registration of mark resembling prior mark or likely to cause confusion or deceive purchasers.

9. **Courts** ⬦⟳351½—**Suit for unfair competition, accompanying suit for trade-mark infringement between residents of same state, held subject to dismissal, where not inseparably connected.**

In suit for infringement of trade-marks and for unfair competition, brought in federal court between residents of same state, case for unfair competition depending on issues not inseparably involved in the infringement of trade-mark covering plaintiff's perfume products held subject to dismissal, Trade-Mark Act, § 19 (15 USCA § 99), providing redress for violation of trade-mark as such.

10. **Trade-marks and trade-names and unfair competition** ⬦⟳84—**Registered trade-marks must be marked as such to constitute basis of infringement suit (Trade-Mark Act, § 28 [15 USCA § 107]).**

In suit for infringement of registered trade-marks, trade-marks must be marked by statement giving notice of registration required by Trade-Mark Act, § 28 (15 USCA § 107).

**11. Trade-marks and trade-names and unfair competition ⬤84—Previous invalidity of trade-mark, valid at time of suit, is immaterial.**

Mere fact that trade-mark may not have been valid originally is immaterial, provided at time of suit it had become a valid trade-mark, duly registered.

In Equity. Suit by Pinaud, Inc., against Hyman Huebschman, doing business under the name and style of the Ritz Perfume Company, for infringement of a trade-mark and unfair competition. Decree in accordance with opinion. Decree affirmed in 27 F.(2d) 538.

Hoguet & Neary, of New York City (Daniel L. Morris, of New York City, of counsel), for plaintiff.

Davies, Auerbach & Cornell, of New York City (Marion Butler and Alexander J. Feild, both of New York City, of counsel), for defendant.

INCH, District Judge. Plaintiff complains that defendant has unlawfully appropriated and infringed certain trade-marks of plaintiff's, and also alleges that an unfair competition is being carried on by defendant, to plaintiff's injury.

Both the plaintiff and the defendant are residents of the same state, to wit, state of New York. This being undisputed, the defendant at the outset, and also at the end, of plaintiff's case, moved to dismiss the cause of action for unfair competition.

While it has been stated that the "common law of trade-marks is but * * * the broader law of unfair competition" (see Hanover Milling Co. v. Metcalf, 240 U. S. 413, 36 S. Ct. 360, 60 L. Ed. 713), yet the distinction between the statutory law of trade-marks, so far as what may be termed a trade-mark·suit and one for unfair competition is concerned, in regard to jurisdiction, is very important. A few of the many cases as to this distinction may be briefly considered.

Luyties v. Hollendeer (C. C.) 30 F. 632. The word "Kaiser" applied to mineral water. Wallace, J. (1878): "Both parties are citizens of this state, and for that reason this court can entertain jurisdiction only upon the theory that the complainants have a valid trade-mark in the word registered, pursuant to the Act of Congress of March 3, 1881, and no relief can be granted because of any unlawful competition in trade by the defendants with the complainants. The question, therefore, is whether the complainants have the exclusive right to appropriate the word

'Kaiser' as a trade-mark for natural mineral water." The bill was dismissed.

"It is probably true that, where a federal question is involved, the court is justified in adjudicating upon all questions growing out of the transaction involved." Coxe, J., Goldstein v. Whelan (C. C.) 62 F. 124. This was a case showing an invalid trade-mark, but a clear case of unfair competition. Jurisdiction was denied.

"Complainant seeks to rely upon other facts than the mere use by defendants of their own firm initials, 'B. & S.' He points out similarities in the form, size, and color of the drops, in the arrangement of the package, in the text and style of the directions for use, and other details tending, as he claims, to show an intent to deceive the purchasing public. It is apparent from the opinion of the judge who heard the case in the Circuit Court that it was these similarities which induced him to grant the motion for preliminary injunction. *But these matters are immaterial* to the question presented in this suit for the determination of a federal court. The complainant and defendants are all citizens of the same state. The federal court can take jurisdiction, therefore, only of the question whether the registered trade-mark declared upon has been infringed, and that trade-mark solely for the two letters 'S. B.,' without any designation of style or type, position on the cover, or association with other elements of dress or decoration." Burt v. Smith, 71 F. 161, page 163 (C. C. A. 2). (Italics mine.)

"Unfair competition is distinguishable from the infringement of a trade-mark in this: That it does not involve necessarily the question of the exclusive right of another to the use of the name, symbol, or device. A word may be purely generic or descriptive, and so not capable of becoming an arbitrary trade-mark, and yet there may be an unfair use of such word or symbol which will constitute unfair competition." Cole Co. v. American Co., 130 F. 703, page 705 (C. C. A. 7th).

"Unfair trade, we have seen, was referred to, and it was discussed also by the Circuit Court of Appeals, but it put it aside as an element of decision, because the court was, as it said, 'without jurisdiction to grant relief,' as the right of the Elgin Watch Company arose under the act of Congress, and was limited by the act to *recovery of damages* for the wrongful use of a trade-mark, *or to a remedy* according to the course of equity, 'to enjoin the wrongful use of said trade-

mark used in foreign commerce or commerce with the Indian tribes.' *The remedy in equity for fraud,* it was said, existed before the statute and was not given by it, and that the federal court would have no jurisdiction of it except between citizens of different states. [Illinois Watch Case Co. v. Elgin Nat. Bank] 94 F. [667], 671." Standard Paint Co. v. Trinidad Asph. Co., 220 U. S. 446, page 458, 31 S. Ct. 456, 459 (55 L. Ed. 536).

"The question presented by this litigation is therefore this: To what measure of relief is one entitled who owns as a valid trade-mark a word which before registration under the statute he could not protect at law, without invoking the doctrine of unfair competition? It is to be regretted that sharp distinction was ever drawn between that trespass on property rights called trade-mark infringement, and the exactly similar trespass commonly spoken of as unfair competition, but, since the distinction has not only become well known, but been made a basis for limiting jurisdiction, *it is necessary here to find infringement of trade-mark according to strict rules,* if complainant is to be entitled to any relief.

"Trade-mark infringement is the use by defendant for trading purposes, and in connection with goods of the kind as to which complainant's exclusive right exists, of a mark identical with complainant's, or colorably resembling it. *The wrongful imitation need not be exact or perfect, but may be limited or partial.* McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828; Saxlehner v. Eisner, etc., Co., 179 U. S. 19, 21 Sup. Ct. 7, 45 L. Ed. 60." Thaddeus Davids Co. v. Davids (C. C.) 190 F. 285, pages 286, 287. (Italics mine.)

"Plaintiff argues, however, that there is another reason for retaining the bill. He has in good faith charged infringement. Over that charge this court has jurisdiction, *and it should proceed to pass on all the questions involved.* If, after hearing all the evidence, it is satisfied that, while the defendant has not infringed the trade-mark, he has unfairly competed, *it should give complete relief by enjoining the further prosecution of such unfair competition.* This contention rests upon a confusion between the consequences of limitations upon the powers of courts of equity as such, and the restrictions imposed upon the jurisdiction of the federal courts, whether of law or of equity, by the Constitution and Statutes of the United States.

"A court of equity, whose jurisdiction has been invoked to give relief which only such court is competent to furnish, may sometimes, after it has heard the whole case, be of opinion that justice and right can be best done by confining the relief given to something which might have been obtained from a court of law. Such relief the chancellor may award, although if the bill originally had sought that, and nothing more, he must have declined jurisdiction. But a federal court cannot decide a controversy to which the judicial power of the United States does not extend merely because plaintiff has mistakenly assumed that some federal right of his has been infringed. A plaintiff cannot in the federal courts secure redress for unfair competition by a citizen of the same state merely by alleging that such defendant has infringed a registered trade-mark, when in point of fact *no such infringement has taken place,* and in that respect it is immaterial whether the allegation was made in good or bad faith." Sprigg v. Fisher (D. C.) 222 F. 964, pages 966, 967. (Italics mine.)

"The complainant includes a charge of unfair trading. Since the parties are not citizens of different states, that *part of the bill was correctly dismissed without prejudice.*"

"The trade-marks thus registered *are valid, they have been infringed, and complainant is entitled to the relief accorded to him by section 16* of the act of 1905 [15 USCA § 96]." Planten v. Gedney, 224 F. 382, page 386 (C. C. A. 2d). (Italics mine.)

"In an infringement suit where a defendant is a citizen of the same state as complainant and the court has jurisdiction only because of the nature of the suit, it is without jurisdiction to adjudicate a counterclaim for unfair competition, set up by such defendant in his answer." U. S. Bolt Co. v. Kroncke Co., 234 F. 868 (C. C. A. 7th).

Where a patent was found infringed and there was also a cause of action for unfair competition, although the parties were both residents of another state, the court did entertain charges of unfair competition on the ground that such facts were simply aggravations of the infringement. Ludwigs v. Payson Mfg. Co. (C. C. A.) 206 F. 64.

"While the authorities are not uniform, we have held that, *where a patent has been held valid and infringed, the unfair competition feature arising out of that infringement may be included in an accounting* for profits and damages, although the parties are citizens of the same district. K–W Ignition Co. v. Temco Co., 156 C. C. A. 286, 243 F. 588, 591. The court below, having found both patents valid and infringed, *had jurisdiction to consider the question of unfair competi-*

*tion as directly incident thereto;* we think jurisdiction still exists with respect to the sash rail patent which we have held valid and infringed. But as to defendant's sash rail construction, considering it now independently and not as a part of a complete window front structure, *we think it not the subject of damages for unfair competition;* that is, of damages beyond those resulting from the mere fact of infringement, and because of the apparent lack of unnecessary and intentional imitation of plaintiff's design." 250 F. 239. "For we think the logical theory on which (in case a patent has been sustained) damages for unfair competition may be considered is that such damages are to be treated merely as 'aggravation of the infringement.'" 250 F. 240.

"The decree of the court below as * * * to unfair competition" was "reversed, * * *. without prejudice." Detroit Showcase Co. v. Kawneer Co., 250 F. 234 (C. C. A. 6th). (Italics mine.)

"Nor can we assume jurisdiction of this case as one wherein the defendant had made use of plaintiff's device for the purpose of defrauding the plaintiff and palming off its goods upon the public as of the plaintiff's manufacture. Our jurisdiction depends solely upon the question whether plaintiff has a registered trade-mark valid under the Act of Congress, and, for the reasons above given, we think it has not." Leschen Rope Co. v. Broderick, 201 U. S. 166, page 172, 26 S. Ct. 425, 427 (50 L. Ed. 710).

"If the trade-mark were valid, *the issue of unfair trade would be unnecessary to decide.*" Standard Paint Co. v. Trinidad Asph. Co., 220 U. S. 446, page 457, 31 S. Ct. 456, 458 (55 L. Ed. 536). (Italics mine.)

"This is not to say that, in this view, the case becomes one simply of unfair competition, as that category has been defined in the law; for, whatever analogy may exist with respect to the scope of protection in this class of cases, still the right to be protected against an unwarranted use of the registered mark has been made a statutory right and the courts of the United States have been vested with jurisdiction of suits for infringement, regardless of diversity of citizenship. Moreover, in view of this statutory right, *it could not be considered necessary* that the complainant in order to establish infringement *should show wrongful intent in fact* on the part of the defendant, or facts justifying the inference of such an intent. Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 549 [11 S. Ct. 396, 34 L. Ed. 997]; Singer Mfg. Co. v. June Mfg. Co., 163 U. S.

169 [16 S. Ct. 1002, 41 L. Ed. 118]; Elgin Nat. Watch Co. v. Illinois Watch Co., 179 U. S. 665, 674 [21 S. Ct. 270, 45 L. Ed. 365]. Having duly registered under the act, the complainant would be entitled to protection against any infringing use; but, in determining the extent of the right which the statute secures and what may be said to constitute an infringing use, regard must be had, as has been said, to the nature of the mark and its secondary, as distinguished from its primary, significance." Thaddeus Davids Co. v. Davids, 233 U. S. 461, 471, 34 S. Ct. 648, 652 (58 L. Ed. 1046, Ann. Cas. 1915B, 322).

"It seems very plain that the plaintiff had a cause of action outside the statute, but that would have to be asserted elsewhere, as the suit was between citizens of the same state. The statute alone gave the right to come into this court of the United States. Coming in to assert its statutory rights, we will *assume* in the plaintiff's favor that it could recover for unfair competition that was inseparable from the statutory wrong, but it could not reach back and recover for earlier injuries to rights derived from a different source." Stark Bros. v. Stark, 255 U. S. 50, 41 S. Ct. 221, 65 L. Ed. 496. (Italics mine.)

[1, 2] Before proceeding further, it may be well to ascertain cases as examples of the present law as to what are valid trade-marks in view of the old and present law.

To entitle the name to equitable protection as a trade-mark, the right to its use must be exclusive, and not one which others can employ with as much truth as those who adopted it. Canal Co. v. Clark, 13 Wall. 311, 20 L. Ed. 581.

"The unnecessary adoption of a part of a plaintiff's trade-mark—a part so substantial as to have become a trade-name or nickname for the goods—is generally regarded as an infringement. The use by a defendant of a trade-mark identical with the name which has been derived from a plaintiff's trademark proper, and has become sufficiently descriptive of plaintiff's goods, is the adoption of a mark which will cause its goods to bear the same name in the market.

"Neither subtractions from nor additions to a trade-mark proper will avoid infringement, when such imitation as is likely to lead to confusion still remains despite the changes." Cases cited; Ammon v. Narragansett Co. (D. C.) 252 F. 276.

The definition of a trade-mark has been given by this court and the extent of its use described. It was said by the Chief Justice, speaking for the court, that "the term has

been in use from a very early date, and, generally speaking, means a distinctive mark of authenticity, through which the products of particular manufacturers or the vendable commodities of particular merchants may be distinguished from those of others. It may consist in any symbol or in any form of words, but as its office is to point out distinctively the origin or ownership of the articles to which it is affixed, it follows that no sign or form of words can be appropriated as a valid trade-mark, which, from the nature of the fact conveyed by its *primary* meaning, others may employ with equal truth, and with equal right, for the same purpose." Elgin Nat. Watch Co. v. Illinois Watch Co., 179 U. S. 665, 673, 21 S. Ct. 270, 273 (45 L. Ed. 365); Standard Paint Co. v. Trinidad Asph. Co., 220 U. S. 446, 453, 31 S. Ct. 456, 55 L. Ed. 536.

"The main defense relied on is that the letters 'C. & C.' alone or in combination with the maker's name cannot be held to be a valid trade-mark, because they are descriptive. * * * The evidence indicates that these letters have been so understood in the trade and by some, possibly many, users for many years. But, as we understand the decision in the Davids Case, 233 U. S. 461, 34 Sup. Ct. 648, 58 L. Ed. 1046 [Ann. Cas. 1915B, 322], that circumstance does not prevent their being registered as a valid trade-mark under this act, if they have been exclusively used as such by complainant for 10 years prior to 1905. It was one purpose of the act to protect just such a situation. If the applicant satisfied the Patent Office that the conditions required in section 5 [15 USCA § 85] existed—10 years' exclusive use —he should get his registration, even though the mark were descriptive; and registration made his trade-mark a valid one, although at common law · its descriptiveness might make it invalid." Planten v. Gedney, 224 F. 382, page 385 (C. C. A. 2d).

The controlling case for this court would seem to be that of Planten v. Gedney, supra (C. C. A. 2d).

[3] The cases where additional damages to those allowed by the statute have been allowed as a result of "aggravation," pursuant to the theory of unfair competition, are exceptionally few. Such damages have not been allowed except where they are inseparable from the actual violations of the trade-mark. In most cases damages not so clearly inseparable and depending on proof of other facts than mere use of another's trade-mark have been left to a suit in equity. The cases therefore seem to hold simply that under certain conditions and because of unusual facts a court having jurisdiction because of a valid trade-mark violation may receive and consider testimony as to an intentional unfair use in trade of such trade-mark constituting an unfair competition by defendant, but, even where a valid trade-mark has been infringed, the court, if it is of the opinion, from the record or otherwise, that justice requires a separate suit of such allegations and proof to support charges of unfair competition, should dismiss such cause of action where jurisdiction depends solely because of the trade-mark violation, and in any case may properly do so without prejudice even if such course may result in recovery of further damages than those allowed by the trade-mark statute. Such other damages result from a violation of an entirely different form of right of plaintiff.

It becomes necessary, therefore, to carefully consider the real point in this suit, which is whether or not plaintiff has shown valid trade-marks belonging to it, and, if so, whether the same have been appropriated by defendant.

[4] Plaintiff relies on three trade-marks. First, the words "Lilas de France." This mark, and the other two marks as well, were used to identify toilet water sold by one Victor Klotz and his successor since 1890. In 1925 a corporation was formed, Pinaud, Inc. (plaintiff), and this corporation succeeded to all the above rights, trade-marks, etc.

There were two registrations of this trade-mark, one under the old law of 1883 (22 Stat. 490), and the other under the new law of 1905. The defendant admitted, and the label introduced by defendant (Defendant's Exhibit A) shows, that he uses these words "Lilas de France." As to this trade-mark therefore, the question is whether or not these words can be considered merely descriptive (section 5, Trade-Mark Act February 20, 1905) or are susceptible of exclusive appropriation.

These words mean "Lilacs of France" or "French Lilacs." This is a name of a flower common to France as well as to the United States.

Assuming that defendant's perfume is made from this flower, can another prevent him from saying that his perfume represents an extract from the Lilacs of France or French Lilacs or Lilas de France? I do not think that these words in their primary meaning are anything but a description of the extract or perfume. See Wrigley v. Grove Co. (C. C. A.) 183 F. 99; Larson v.

Wrigley (C. C. A.) 253 F. 914, certiorari denied 248 U. S. 580, 39 S. Ct. 22, 63 L. Ed. 430; Kellogg Toasted Co. v. Quaker Co. (C. C. A.) 235 F. 657; and many other cases that could be cited. This brings us to the question whether or not they may have become a trade-mark by virtue of long association with the product of plaintiff.

It may very well be that the case relied on by plaintiff, Le Blume Import Co. v. Coty (C. C. A.) 293 F. 344 (trade-mark "L'Origan"), is very persuasive on the question of whether or not the trade-mark "Lilas de France" is descriptive, but there are differences which may be pointed out, and I prefer to place my decision on the ground here stated, to wit, the secondary meaning of this trade-mark of plaintiff and its subsequent registration.

The evidence shows that all three of these trade-marks of plaintiff have been widely used by plaintiff or plaintiff's predecessors in business since 1890 in the United States, in commerce among the several states, as trade-marks for toilet water and other preparations of the same classifications. During this quarter of a century the trade-mark "Lilas de France" has been used in connection with this toilet water. Large sums in advertising have been spent, and extensive campaigns have been conducted in the commercial line. Its use, regardless of its primary meaning, has plainly become so well known to consumers and the general public as to have a secondary meaning, with all the rights which now flow from such a meaning. This is even manifest if one but considers the argument of the defendant in this regard.

Here is a trade-mark extensively well known. It taxes credulity to understand, if these simple words are merely descriptive and in the French language, why so many vendors in America should profess such fondness for these very words in a foreign language. Defendant offered in evidence (Defendant's Exhibit E) a long list of alleged users of this type, and yet but two out of this list seem to have deemed it necessary to appropriate the exact words. The rest apparently use the words "French Lilac" or similar names, as to which no question can be raised.

There is also evidence that quite a number of manufacturers have conceded the exclusive right of plaintiff in this regard. I can see no reason for any harm coming to an honest merchant in his inability to use these exact French words, just as they stand, on his American article, where such use by plaintiff and his predecessors has been open and widespread for very many years. The mere fact that some have not so conceded or been sued is beside the point.

This registration was registered under the old law 1883. It expired on September 12, 1923. On November 5, 1923, plaintiff applied for a new registration under the law of 1905. This was granted May 19, 1925. In the mean time, on July 14, 1924, the defendant under the label law had registered his label with "Lilas de France." This would indicate that even defendant believed that there was something susceptible of exclusive appropriation in this mark.

It seems to me, therefore, that the trade-mark Lilas de France has acquired a "secondary" meaning, and, being registered under the ten year proviso of the Trade-Mark Act of February 20, 1905, is valid as a trade-mark, irrespective of whether or not it was descriptive. Holeproof Co. v. Wallach, 172 F. 859 (C. C. A. 2d); also Ludington Co. v. Leonard, 127 F. 156 (C. C. A. 2d).

The fourth proviso of section 5 of the Trade-Mark Act of February 20, 1905, provides "that nothing herein shall prevent the registration of any mark * * * which was in actual and exclusive use as a trade-mark of the applicant, or his predecessors from whom he derived title for ten years next preceding February 20, 1905." 15 USCA § 85, being the law of February 20, 1905, chapter 592, § 5, 33 Stat. 725, as amended.

This section has been fully construed by the Supreme Court. Thaddeus Davids Co. v. Davids Mfg. Co., 233 U. S. 461, 34 S. Ct. 648, 58 L. Ed. 1046, Ann. Cas. 1915B, 322.

This trade-mark has been admittedly infringed by defendant.

[5] The second trade-mark is the representation of a basket of flowers. In French, "A La Corbeille Fleurie." This was registered in the United States Patent Office May 19, 1925, No. 198,637, and has also been in long prior use, etc., by the plaintiff and its predecessors.

I am unable to find the use of this trade-mark on the labels used by defendant since the commencement of this suit (Defendant's Exhibit A). This trade-mark seems to me to be a valid trade-mark. It is not descriptive of the article. It is a distinctive mark. Le Blume Import Co. v. Coty [C. C. A.] 293 F. 344; Orange Crush Co. v. California Co., 54 App. D. C. 313, 297 F. 892. It gives character and identity to the product for the purpose of indicating the source, maker, or vendor, upon which the consumer has learned to rely. Whether in French or in English,

this would be so. No one would imagine from it more than the pleasant association of the fragrance of the perfume with that of a flower garden or a basket of flowers from that garden. It is an association of ideas helpful in the sale rather than descriptive of the article.

This trade-mark is valid. While, as I have said, the proof shows that defendant has not used this trade-mark since the commencement of the suit, it likewise shows that prior to the suit defendant did use as a part of its label, not this exact trade-mark of plaintiff, but nevertheless a basket of flowers. Plaintiff's Exhibits 28, 31, 32; Defendant's Exhibit B. This all indicates to me that defendant had in mind the well-known label of plaintiff and the excellent reputation attached to it, and the explanation of defendant as to the getting up of his labels is not persuasive to the contrary.

[6, 7] His subsequent labels, however, and his testimony that he thus abandoned his basket of flowers, might present a question in some other suit. Where infringement has been discontinued before the bringing of a suit, the plaintiff is not obliged to rely upon mere promises of the defendant to avoid infringement in the future, as long as it appears that at the time of the suit the defendant still claims the right to do that of which the plaintiff complains. Saxlehner v. Eisner (C. C. A.) 147 F. 189, affirming (C. C.) 140 F. 983. There are other cases along this line, many of them in unfair competition suits, but it seems to me that, dealing as I am strictly with a trade-mark suit, where the proof shows that the defendant did not use the trade-mark at the time of the commencement of the suit or subsequent thereto, and had voluntarily abandoned, prior to the commencement of the suit, the use of a mark the same or similar to the trade-mark of plaintiff, all that would be necessary, in this suit, to protect the plaintiff, would be to enjoin its use in the future without an accounting for past use.

[8] This brings us to the third and last trade-mark of plaintiff. This is the representation of a spray of lilacs. This trade-mark was registered October 27, 1925, No. 204,999. The application was filed June 18, 1925, under the Act of February 20, 1905.

This trade-mark seems to me valid for the same reason that I have given as to the trade-mark 'A La Corbeille Fleurie." It represents a "bunch" of lilacs, or, in more elegant terms, a "spray," as it appears on the label of plaintiff's. Plaintiff's Exhibit 6.

In my opinion the defendant's mark is

27 F.(2d)—34½

but a "colorable imitation." To be sure a careful examination of the two will show minor differences. It takes such a kind of an examination. This difference is also due to some extent to the quality of the workmanship on the label. To say that this spray of flowers or lilacs differs from a similar spray in a small vase seems to me to be ignoring not only the statute, but the protection which should be accorded a valid trade-mark. All through the Trade-Mark Act runs the idea of avoidance of an ordinary resemblance. In section 2 we have the words, "either in the identical form or in such near resemblance thereto as might be calculated to deceive" (Act of February 20, 1905, chapter 592, as amended, 15 USCA § 82), and in section 16, the words, "colorably imitate" (Act of February 20, 1905, chapter 592, as amended, 15 USCA § 96). In section 5, we have a proviso against the registration of a mark "as to be likely to cause confusion or mistake in the mind of the public, or to deceive purchasers." Act of February 20, 1905, chapter 592, as amended, 15 USCA § 85.

These few quotations seem to me to point out the necessity for a vendor to avoid just such a similarity as exists between the bouquet or a spray of flowers in a very small vase by defendant and the spray or bouquet of flowers without the vase belonging to plaintiff. Plaintiff has duly registered this trade-mark. It is in my opinion valid. The defendant has no right to use it or the imitation thereof.

[9] Whether a case of unfair competition could be made out by plaintiff in a proper suit therefor would depend upon many things not necessary to find out or inseparably involved in deciding this question whether or not plaintiff has valid trade-marks and whether or not they have been infringed by defendant. The remedy given by the Trade-Mark Act seems to me to provide adequate redress to plaintiff for any violation of its trade-mark as such. There is no necessity at this time and on this record to reach out beyond the statute to redress other wrongs, if any, not strictly within the violation of the Trade-Mark Act upon which the jurisdiction of this court solely depends.

I believe, therefore, that plaintiff is entitled to an injunction restraining defendant from using the trade-mark "Lilas de France," the trade-mark spray or bouquet of flowers, with such redress for such violations as is given by section 19 of said act (15 USCA § 99, February 20, 1905, chapter 592, § 19, 33 Stat. 729).

I also think that, although defendant has

apparently abandoned the use of his colorable imitation of plaintiff's trade-mark, a basket of flowers, the plaintiff still should have an injunction restraining defendant from using such trade-mark or any colorable imitation thereof, though without an accounting or damages in this regard.

The suit for unfair competition is dismissed without prejudice. Planten v. Gedney, supra.

There is one thing more, and this should be taken up by counsel at the time of settlement of the decree to be entered hereon.

[10, 11] I am unable to find on any of the trade-marks in evidence, belonging to plaintiff, the statement required by section 28 of the Trade-Mark Act (15 USCA § 107). The infringement complained of is an infringement of registered trade-marks. The mere fact that in the case of one of them it may not have originally been a valid trade-mark is of no importance; provided I am correct in finding that it has now become, by law, a valid trade-mark, duly registered. This failure to so mark a trade-mark is not to be overlooked. See Stark Bros. v. Stark, 255 U. S. 50, 41 S. Ct. 221, 65 L. Ed. 496; Leschen Co. v. Broderick, 201 U. S. 166, 26 S. Ct. 425, 50 L. Ed. 710. In the Stark Case, supra, there was a notice given to discontinue infringement and also proof of the willful character of defendant's conduct.

Settle decree on notice.