# THADDEUS DAVIDS COMPANY *v.* DAVIDS MANUFACTURING COMPANY.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 184. Argued January 22, 1914.—Decided April 27, 1914.

A trade-mark consisting of an ordinary surname is not the subject of exclusive appropriation as a common-law trade-mark, but may, under the fourth proviso of § 5 of the Trade-Mark Act of 1905, be validly registered if in use for ten years next preceding the passage of that act in the manner specified therein.

A proviso in a statute will not be so construed as to have little or nothing to act upon and to have no reason for its insertion.

The fourth proviso of § 5 of the Trade-Mark Act of 1905 modifies the general limitations contained in the second proviso of the same section against the use of personal and geographical names and terms descriptive of character and quality.

In enacting the Trade-Mark Act of 1905 and inserting the provisos in § 5 thereof, Congress did not intend to provide for a barren notice of an ineffectual claim, but to confer definite rights, and an applicant properly registering under the act becomes the owner of the trademark and entitled to be protected in its use as such.

While a trade-mark consisting of a proper name may be registered

under the fourth proviso of § 5 of the Trade-Mark Act of 1905, another who uses that name will not be regarded as infringing the trade-mark unless the name is so reproduced, copied or imitated as to mislead the public with respect to the origin or ownership of the goods.

Improperly using a proper-name trade-mark registered under the fourth proviso of § 5 of the Trade-Mark Act of 1905 in such manner as to mislead the public and thereby constitute infringement is not merely unfair competition at common law, which would not give the Federal court jurisdiction unless diverse citizenship existed, but is a violation of a Federal right and a Federal court has jurisdiction of an action based thereon.

While in a case for unfair competition it may be necessary to show intent to deceive the public, in a case for violation of a properly registered trade-mark it is not necessary to show wrongful intent or facts justifying an inference of such intent.

Complainant having, for the period and in the manner specified in the proviso of § 5 of the Trade-Mark Act of 1905, used the name "Davids'" in connection with ink manufactured and sold by it in a particular manner, that name was properly registered as a trade-mark and the defendants by using the same word in such a similar style on the ink manufactured by them as to mislead the public infringed complainant's rights under the statute and should be enjoined.

192 Fed. Rep. 915, reversed.

THE facts, which involve the construction of the Trade-Mark Act of February 20, 1905, and what constitutes infringement of a trade-mark registered thereunder, are stated in the opinion.

*Mr. W. P. Preble* for petitioner.

*Mr. Emerson R. Newell* for respondents:

The court cannot take jurisdiction of unfair competition.

Defendants have a right to use their own name.

The acts complained of are mere alleged similarity of labels.

Complainant has made false statements: its registration was invalid.

There was no unfair competition.

There was no use by defendants as required by the statute.

The certificate of registration was not produced.

In support of these contentions, see *McLean* v. *Fleming,* 96 U. S. 828; *Manhattan Medicine Co.* v. *Wood,* 108 U. S. 706; *Marsh* v. *Nichols,* 128 U. S. 538; *Singer* v. *June,* 163 U. S. 169; *Elgin* v. *Illinois,* 179 U. S. 665; *Holzapfel* v. *Rahtjen,* 193 U. S. 53; *Worden* v. *California Fig Syrup Co.,* 187 U. S. 282; *Warner* v. *Searle,* 191 U. S. 145; *Howe Scale Co.* v. *Wyckoff, Seamans & Benedict,* 198 U. S. 134; *Leschen* v. *Broderick,* 201 U. S. 166; *Hutchinson & Pierce* v. *Loewy,* 163 Fed. Rep. 42; *S. C.* 217 U. S. 457; *Payne* v. *Trask,* 56 Fed. Rep. 233; *Mayor* v. *American,* 60 Fed. Rep. 1016; *Burt* v. *Smith,* 71 Fed. Rep. 161; *American* v. *Leeds,* 140 Fed. Rep. 981; *Davids* v. *Davids,* 178 Fed. Rep. 801; *National Casket Co.* v. *N. Y. & Brooklyn Casket Co.,* 185 Fed. Rep. 533; *Davids* v. *Davids,* 192 Fed. Rep. 915; *Diedrich* v. *Schneider,* 195 Fed. Rep. 35; *In re Cahn, Belt & Co.,* 27 App. D. C. 177; *Wrigley* v. *Norris,* 34 App. D. C. 138; *Worster Brewing Co.* v. *Rueter,* 30 App. D. C. 428; *Kentucky Distillers* v. *Old Lexington,* 31 App. D. C. 223; *Justin Seubert* v. *Santanella,* 36 App. D. C. 520; *Becker* v. *Gambrill,* 38 App. D. C. 585; *Wright* v. *Taylor,* 33 App. D. C. 510; *Ex parte L. & A. Scharff,* 128 Off. Gaz. 2531 (1907 C. D. 172).

MR. JUSTICE HUGHES delivered the opinion of the court.

Thaddeus Davids Company, manufacturer of inks, etc., brought this suit for the infringement of its registered trade-mark "DAVIDS'". It was alleged that the complainant was the owner of the trade-mark; that it had been used in interstate commerce by the complainant and its predecessors in business for upwards of eighty years; that on January 22, 1907, it had been registered by the com-

plainant as a trade-mark, applicable to inks and stamp
pads, under the act of February 20, 1905, c. 592, 33 Stat.
724; that the complainant was entitled to such registration
under § 5 of the act by reason of actual and exclusive use
for more than ten years prior to the passage of the act;
and that the defendants, Cortlandt I. Davids and Walter I.
Davids, trading as Davids Manufacturing Company,
were putting inks upon the market with infringing labels.
The bill also charged unfair competition. Upon demurrer,
the validity of the trade-mark was upheld by the Circuit
Court of Appeals (178 Fed. Rep. 801), and on final hearing,
upon pleadings and proofs, complainant had a decree.
190 Fed. Rep. 285. This decree was reversed by the
Circuit Court of Appeals which held that there was no
infringement of the registered trade-mark and that the
suit, if regarded as one for unfair competition, was not
within the jurisdiction of the court, the parties being
citizens of the same State. 192 Fed. Rep. 915. Certiorari
was granted.

As the mark consisted of an ordinary surname, it was
not the subject of exclusive appropriation as a common
law trade-mark (*Brown Chemical Company* v. *Meyer*, 139
U. S. 540, 542; *Howe Scale Company* v. *Wyckoff*, 198 U. S.
118, 134, 135); and the complainant derived its right from
the fourth proviso of § 5. This section, at the time of the
registration, was as follows (33 Stat. p. 725):[1]

"Sec. 5. That no mark by which the goods of the owner
of the mark may be distinguished from other goods of the
same class shall be refused registration as a trade-mark
on account of the nature of such mark unless such mark—

"(a) Consists of or comprises immoral or scandalous
matter;

"(b) Consists of or comprises the flag or coat of arms or

---

[1] Section 5 has been amended by the acts of March 2, 1907, c. 2573,
34 Stat. 1251; February 18, 1911, c. 113, 36 Stat. 918; January 8, 1913,
c. 7, 37 Stat. 649.

other insignia of the United States, **or any** simulation thereof, or of any State or municipality, or of any foreign nation: *Provided,* That trade-marks which are identical with a registered or known trade-mark owned and in use by another, and appropriated to merchandise of the same descriptive properties, or which so nearly resemble a registered or known trade-mark owned and in use by another, and appropriated to merchandise of the same descriptive properties, as to be likely to cause confusion or mistake in the mind of the public, or to deceive purchasers, shall not be registered: *Provided,* That no mark which consists merely in the name of an individual, firm, corporation, or association, not written, printed, impressed, or woven in some particular or distinctive manner or in association with a portrait of the individual, or merely in words or devices which are descriptive of the goods with which they are used, or of the character or quality of such goods, or merely a geographical name or term, shall be registered under the terms of this Act: *Provided further,* That no portrait of a living individual may be registered as a trade-mark, except by the consent of such individual, evidenced by an instrument in writing: *And provided further,* That nothing herein shall prevent the registration of any mark used by the applicant or his predecessors, or by those from whom title to the mark is derived, in commerce with foreign nations or among the several States, or with Indian tribes, which was in actual and exclusive use as a trade-mark of the applicant or his predecessors from whom he derived title for ten years next preceding the passage of this Act.".

The fourth proviso, or ten-year clause, has manifest reference to marks which are not technical trade-marks; otherwise, it would have no effect. The owner of a trade-mark valid at common law and used in commerce with foreign nations, or among the several States, or with Indian tribes, may obtain its registration under the act

without showing the user of ten years required by this
clause. Sections 1, 2. Congress evidently had in mind the
fact that marks, although not susceptible of exclusive
appropriation at common law, frequently acquired a
special significance in connection with particular com-
modities; and the language of the fourth proviso was
carefully chosen in order to bring within the statute
those marks which, while not being technical trade-marks,
had been in "actual and exclusive use" as trade-marks
for ten years next preceding the passage of the act.[1]  See

---

[1] In the bill as it passed the House of Representatives, the fourth
proviso in § 5 read as follows: "*And provided further*, that nothing herein
shall prevent the registration of any *trade-mark* used by the applicant
or his predecessors, or by those from whom title to the *trade-mark* is de-
rived, in commerce with foreign nations or among the several States or
with Indian tribes, which was in actual *and lawful* use as a trade-mark
of the applicant, or his predecessors from whom he derived title over
ten years next preceding February twentieth, nineteen hundred and
five."  The bill was amended in the Senate so as to substitute the
word "mark" for the word "trade-mark", where it is italicised above,
and also by striking out the words "and lawful".  The conference
committee recommended that the House recede from its disagreement
to these amendments and that the words "and exclusive" should be
substituted for the words "and lawful".  The managers on the part
of the House made the following statement in explanation:

"On amendments Nos. 2 and 3: The word 'mark' is substituted in
each instance for the word 'trade-mark' in the bill as it passed the
House for the reason that the use of the word 'trade-mark' in this con-
nection would not have accomplished the purposes of the proviso of the
section in question.

"On amendment No. 4: The words 'and lawful' were stricken out
by the Senate amendment, and by the conference report it is recom-
mended that the words 'and exclusive' be substituted therefor.  The
purpose of this amendment is to prohibit the registration of any marks
which are not technical trade-marks unless the applicant has used such
mark exclusively for the period of ten years.  The words 'next preced-
ing' are inserted in place of the words 'prior to' the passage of the act,
so as to require the exclusive use of the mark for the ten years im-
mediately preceding the passage of this act."  Cong. Rec. Vol. 39,
pp. 1398, 2412.

*In re Cahn, Belt & Co.,* 27 App. D. C. 173, 177; *Worster Brewing Corp.* v. *Rueter,* 30 App. D. C. 428, 430, 431; *In re Wright,* 33 App. D. C. 510.

It is suggested, however, that the privilege accorded by this proviso is limited to marks which lie outside the positive prohibitions contained in the earlier clauses of § 5. Thus, it is said that the exceptions with respect to marks of a scandalous sort, and as to those embracing public insignia, are plainly intended to apply to all marks of the described character whether or not they had been used for the preceding ten years (*In re Cahn, Belt & Co., supra*); and, it is urged that if this be so, the prohibitions of the provisos which precede the ten-year clause must likewise be deemed to restrict its scope. The emphasis in the present case is placed upon the second proviso in § 5. This, in substance, prohibits the registration of marks consisting merely of individual, firm or corporate names, not written or printed in a distinctive manner, or of designations descriptive of the character or quality of the goods with which they are used, or of geographical names or terms; and it thus contains, as the Court of Appeals said, "a fairly complete list" of the marks used by dealers in selling their goods, which are not valid trade-marks at common law. If the ten-year proviso be construed as not to apply to any marks within this comprehensive description, the clause would have little or nothing to act upon and we can conceive of no reason for its insertion.

We think that the intent of Congress is clear. In the opening clause of § 5, it is provided that no mark by which the goods of the owner may be distinguished from other goods of the same class shall be refused registration as a trade-mark, on account of its nature, unless it consists of, or comprises: (a) immoral or scandalous matter; or (b) certain public insignia. The marks within these excepted classes are withdrawn from the purview of the act. Then,

in dealing with the marks which remain, limitations upon registrability are defined by the first, second and third provisos; and the restrictions thus imposed are in turn qualified by the fourth proviso or ten-year clause. It follows that the fourth proviso in no way detracts from the force of the exceptions contained in clauses (a) and (b) which were plainly intended to be established without qualification; but the generality of the succeeding prohibitions is qualified. It may well be that this qualification, by reason of its terms, does not affect the first proviso, which relates to cases of conflicting trade-marks, as the ten-year clause explicitly requires that the use shall have been "exclusive." But there can be no doubt that this clause does modify the general limitations contained in the second proviso with respect to the use of marks consisting of names of persons, firms or corporations, of terms descriptive of character and quality, or of geographical names or terms. Marks of this sort, notwithstanding the general prohibition, were made registrable when the applicant or his predecessors had used them, actually and exclusively, as trade-marks for the described period.

In this view, the complainant was entitled to register its mark. We need not stop to discuss the contention that the complainant's use had not been exclusive, or that the mark had not been used in interstate commerce, or the further defense that the complainant should be denied relief because it had deceived the public. It is enough to say that these contentions were without adequate support in the evidence and were properly overruled by the Circuit Court.

Having the right to register its mark, the complainant was entitled to its protection as a valid trade-mark under the statute. As defined in § 29, (33 Stat. 731) "the term 'trade-mark' includes any mark which is entitled to registration under the terms of this act." The defendants,

however, insisted below, and urge here, that although the mark was registrable it was not susceptible of ownership and hence that the complainant could not maintain a suit for injunction, profits and damages, as provided in the statute, for the reason that the remedies it affords are available only to "owners" (§§ 16, 19). That is to say, that registration was expressly permitted but that protection to the registrant was denied. This interpretation, of course, would render the ten-year proviso meaningless by stripping it of practical effect. It was not the intention of Congress thus to provide for a barren notice of an ineffectual claim, but to confer definite rights. The applicant, who by virtue of actual and exclusive use is entitled to register his mark under this clause, becomes on due registration the "owner" of a "trade-mark" within the meaning of the act, and he is entitled to be protected in its use as such.

The further argument is made that, assuming that the complainant has a valid registered trade-mark, still the protection is limited to its use when standing alone (as the complainant has used it on its labels) and that there can be no infringement unless it is used in this precise manner. The statutory right cannot be so narrowly limited. Not only exact reproduction, but a "colorable imitation" is within the statute; otherwise, the trade-mark would be of little avail as by shrewd simulation it could be appropriated with impunity. The act provides (§ 16): "Any person who shall, without the consent of the owner thereof, reproduce, counterfeit, copy, or colorably imitate any such trade-mark . . . and shall use, or shall have used, such reproduction, counterfeit, copy or colorable imitation in commerce among the several States . . . shall be liable. . . ." This provision applies to all trade-marks that are within the act, including those which come under the ten-year clause, provided they are not used "in unlawful business", or "upon any article injurious in itself", or

"with the design of deceiving the public", and have not been "abandoned" (§ 21).

But, while this is true, the inquiry as to the extent of the right thus secured by the statute, in the case of marks which are admitted to registration under the ten-year clause, is not completely answered. It is apparent that, with respect to names or terms coming within this class, there may be proper uses by others than the registrant even in connection with trade in similar goods. It would seem to be clear, for example, that the registration for which the statute provides was not designed to confer a monopoly of the use of surnames, or of geographical names, as such. It is not to be supposed that Congress intended to prevent one from using his own name in trade, or from making appropriate reference to the town or city in which his place of business is located; and we do not find it necessary to consider the question of the validity of such an attempt if one were made. Congress has admitted to registration the names or terms belonging to the class under consideration simply because of their prior use as trade-marks, although they had not been such in law. Their exclusive use as trade-marks for the stated period was deemed in the judgment of Congress a sufficient assurance that they had acquired a secondary meaning as the designation of the origin or ownership of the merchandise to which they were affixed. And it was manifestly in this limited character only that they received statutory recognition, and, on registration, became entitled to protection under the act.

In the case, therefore, of marks consisting of names or terms having a double significance, and being susceptible of legitimate uses with respect to their primary sense, the reproduction, copy or imitation which constitutes infringement must be such as is calculated to mislead the public with respect to the origin or ownership of the goods and thus to invade the right of the registrant to the use

of the name or term as a designation of his merchandise. This we conceive to be the meaning of the statute. It follows that where the mark consists of a surname, a person having the same name and using it in his own business, although dealing in similar goods, would not be an infringer, provided that the name was not used in a manner tending to mislead and it was clearly made to appear that the goods were his own and not those of the registrant. This is not to say that, in this view, the case becomes one simply of unfair competition, as that category has been defined in the law; for, whatever analogy may exist with respect to the scope of protection in this class of cases, still the right to be protected against an unwarranted use of the registered mark has been made a statutory right, and the courts of the United States have been vested with jurisdiction of suits for infringement, regardless of diversity of citizenship. Moreover, in view of this statutory right, it could not be considered necessary that the complainant in order to establish infringement should show wrongful intent in fact on the part of the defendant, or facts justifying the inference of such an intent. (*Lawrence Mfg. Co.* v. *Tennessee Mfg. Co.*, 138 U. S. 537, 549; *Singer Mfg. Co.* v. *June Mfg. Co.*, 163 U. S. 169; *Elgin Nat'l Watch Co.* v. *Illinois Watch Co.*, 179 U. S. 665, 674.) Having duly registered under the act, the complainant would be entitled to protection against any infringing use; but, in determining the extent of the right which the statute secures and what may be said to constitute an infringing use, regard must be had, as has been said, to the nature of the mark and its secondary, as distinguished from its primary, significance.

The distinction between permissible and prohibited uses may be a difficult one to draw in particular cases but it must be drawn in order to give effect to the act of Congress. That the distinction may readily be observed in practice is apparent. In this case, for instance, if the de-

fendants had so chosen, they could have adopted a distinct mark of their own, which would have served to designate their inks and completely to distinguish them from those of the complainant. It was not necessary that, in exercising the right to use their own name in trade, they should imitate the mark which the complainant used, and was entitled to use under the statute, as a designation of its wares; or that they should use the name in question upon their labels without unmistakably differentiating their goods from those which the complainant manufactured and sold.

We agree with the Circuit Court that infringement was shown. The complainant put its mark "DAVIDS'" prominently at the top of its labels. The defendants, in the same position on its labels, put "C. I. DAVIDS'". At the bottom of their labels the defendants placed "DAVIDS MFG. CO." The use of the name in this manner was a mere simulation of the complainant's mark which it had duly registered; it constituted a "colorable imitation" within the meaning of the act. The decree of the Circuit Court accordingly restrained the defendants from the use of the words "Davids Manufacturing Company", and from the use of the word "Davids" at the top of their labels in connection with the business of making and selling inks. We think that the complainant was entitled to this measure of protection.

*The decree of the Circuit Court of Appeals must therefore be reversed and that of the Circuit Court affirmed. It is so ordered.*