**NATIONAL MINERAL CO. v. BOURJOIS, Inc.**

No. 4662.

Circuit Court of Appeals, Seventh Circuit.

Nov. 16, 1932.

Rehearing Denied Jan. 6, 1933.

Maurice H. Daniels, of Chicago, Ill., for appellant.

William T. Woodson, of Chicago, Ill., Fred A. Klein, of New York City, and Edw. S. Rogers and Allen M. Reed, both of Chicago, Ill., for appellee.

Before ALSCHULER and SPARKS, Circuit Judges, and WILKERSON, District Judge.

SPARKS, Circuit Judge (after stating the facts as above).

Since the trade-marks in controversy were registered under the Trade-Mark Act of February 20, 1905 (15 USCA § 81 et seq.), appellee must be considered as the prima facie owner of them and entitled to be protected in its use of them, if such prima facie ownership is not overcome by other evidence. 33 Stat. 728, § 16 (15 USCA § 96); Thaddeus Davids Co. v. Davids, 233 U. S. 461, 34 S. Ct. 648, 58 L. Ed. 1046.

Appellant contends that the words "Peach Blow," "Peaches," and "Peach Bloom," when used in the perfume and cosmetic business, are so descriptive of a color that they may not be appropriated to the detriment of others. This contention cannot prevail. It is quite obvious from the evidence that appellee does not use the words "Peaches" or "Peach Blow" as descriptive of the color of the articles sold, for it is uncontradicted that it puts out Peaches Face Powder in four colors, namely, white, flesh, brunette, and ochre, and each color is marked by a separate label. It is also quite apparent that appellant does not use the words "Peach Bloom" as descriptive of color, for its president testified that it used those words as a trade-mark and not as a color designation.

■ A descriptive name, though not originally capable of exclusive appropriation, may, by use and association with a commodity, obtain a secondary signification denoting that goods bearing it come from one source; and thus a superior right to its use may be acquired by the person who first adopted it. Barton v. Rex-Oil Co. (C. C. A.) 2 F.(2d) 402, 40 A. L. R. 424.

In Pinaud, Inc., v. Huebschman (D. C.) 27 F.(2d) 531, 536, the defendant contended that the French phrase "A La Corbeille Fleurie," meaning "basket of flowers," was descriptive and could not be a valid trade-mark. The court, in discussing that contention, said: "This trade-mark seems to me to be a valid trade-mark. It is not descriptive of the article. It is a distinctive mark. Le Blume Import Co. v. Coty (C. C. A.) 293 F. 344; Orange Crush Co. v. California Co., 54 App. D. C. 313, 297 F. 892. It gives character and identity to the product for the purpose of indicating the source, maker, or vendor, upon which the consumer has learned to rely." Price Baking-Powder Co. v. Fyfe (C. C.) 45 F. 799; Lalaune v. F. R. Arnold & Co. (Cust. & Pat. App.) 39 F.(2d) 269.

In the instant case appellee, since 1913, has continuously used the word "Peaches" as a trade-mark on its face powder and other cosmetics.

The words "Peach Blow" were registered as a trade-mark in 1886 by D. H. Baldwin & Co. for perfumery, cosmetics, sachet powders, dentifrice, and hair dressings. On November 11, 1924, Baldwin Perfumery Company, the successor of D. H. Baldwin & Co., registered the same trade-mark for hair dressings, perfumes and essences and perfume extracts, dentifrices, sachet powder, cold cream, face cream, face lotion, hand lotion, rouge, face powder, lip sticks, toilet waters, and eyebrow pencils.

Some time shortly prior to March 5, 1926, appellee conceived the words "Peach Blow" as a trade-mark, and thought it was the originator of that trade-mark. It ascertained that Baldwin Perfumery Company had originated and registered it, and appellee therefore, on March 5, 1926, took an assignment of that trade-mark from Baldwin Perfumery Company. Since that time appellee has used the trade-mark on some of its products, including face powder; and on October 25, 1927, secured its registration, in appellee's name, as a trade-mark for perfume, toilet water, face powder, sachet, hand cream, and cold cream. At the time of the assignment the only articles manufactured and sold by Baldwin Perfumery Company under the trade-mark "Peach Blow" were a toilet lotion for the hands, toilet water, perfume, and sachet powder.

The evidence is quite convincing that under these trade-marks appellee and its predecessors succeeded in establishing an extensive business throughout the United States; and that the words "Peaches" and "Peach Blow" thus used constitute distinctive marks which give character and identity to the products upon which they are used, and are not to be considered as descriptive, but as indicating the source, maker, and vendor upon which the consumer has a right to rely.

■ It is contended, however, by appellant that the assignment by Baldwin Perfumery Company of the trade-mark "Peach Blow" is defective, in that it attempts to assign the trade-mark and the good will of the trade-mark without transferring the business and the good will of the business.

Section 10 of the Trade-Mark Act of 1905 provides that "every registered trade-mark * * * shall be assignable in con-

nection with the good will of the business in which the mark is used. Such assignment must be by an instrument in writing and duly acknowledged * * *." 33 Stat. 727 (15 USCA § .90).

It is well settled that a manufacturer cannot make a valid assignment of a trade-mark separate from a transfer of the good will and business in connection with which it is used. Independent Baking Powder Co. v. Boorman (C. C.) 175 F. 448; Spiegel et al. v. Zuckerman (C. C.) 175 F. 978.

We do not understand that, in order to render an assignment of a trade-mark valid, the transfer of the business and the good will thereof must be contained in the instrument which contains the assignment of the trademark. If at the time of such assignment the business and good will thereof are actually transferred to the assignee, we think that assignment is sufficient to comply with the statute.

■ In the trial of this cause neither party saw fit to give to the court such enlightenment as to the facts relative to this phase of the transaction, although it would have been quite easy for either party to do so. The burden, of course, was upon appellee to prove a valid assignment of the trade-mark if it desired to rely upon it. If there was a transfer of the business and its good will contemporaneously with the assignment of the trademark, it was a valid assignment; if otherwise, the assignment was invalid. The absence of a simple question and answer which would have clearly determined this fact tends at least to create doubt. The court, however, found that there was such a transfer of the business and the good will thereof, and if there is substantial evidence in the record to support that finding we cannot disturb it: Weld v. McKay (C. C. A.) 218 F. 807. However, we find no such evidence. The assignment of the trade-mark does not mention the business or the good will thereof, and the only evidence upon which appellee relies to support that finding is the testimony of Walter W. Baldwin, who at the time of the assignment was closely connected with Baldwin Perfumery Company, the assignor. In describing that company's sales of its products under the "Peach Blow" trade-mark prior to the assignment on March 5, 1926, he said: "This practice was in vogue from the time we began to manufacture the products until we discontinued it in 1926." It will be observed that the witness does not state the time in 1926 when the company's business was discontinued, and so far as the record shows it may have been subsequent to the assignment of the trade-mark and wholly disconnected from it.

We think this evidence is not sufficient to support the finding that, in connection with the assignment of the trade-mark "Peach Blow," Baldwin Perfumery Company also transferred its business and the good will thereof to appellee.

In support of the trial court's ruling in this respect, appellee calls our attention to Gehl v. Hebe Co., 276 F. 271, 273, decided by this court. In that case the court said: "The assignment states that whereas the Hebe Company is desirous of acquiring the trademark and 'all the business and good will associated therewith,' now therefore in consideration, etc., the Carnation Milk Products Company has sold, assigned, and transferred to the Hebe Company the entire right, title, and interest in and to said trade-mark and certificate of registration, 'together with all the good will of the business connected with said trade-mark * * *.' The granting part of the assignment does not specifically mention the business. While this, in view of the recital, is probably an inadvertent omission, there would seem to be much difficulty in transferring of the good will of a business wholly apart from the business itself. The good will would not be transferred if the grantor remained at liberty to carry on and contend for the very business as to which the good will of the former owner had by his conveyance passed to another. * * * We consider the assignment sufficient."

In the instant case neither the recital nor the granting clause referred in any manner to the business or the good will thereof, and this fact is sufficient to distinguish it from the case cited. We are convinced therefore that the assignment of the trade-mark "Peach Blow" is invalid, and that so far as appellee is concerned appellant has in no way infringed it.

■ That appellee has a clear right in the use of the word "Peaches," both by user and by registration, we think there can be no doubt; but we are of opinion that appellant has in no way violated that right by the use of the words "Peach Bloom" as a trade-mark. The words "Peach Bloom" might very easily be mistaken for the words "Peach Blow," but we are not convinced that either combination would be mistaken for the word "Peaches." The United States Patent Office evidently was of this opinion, because it registered "Peaches" and "Peach Blow" as trade-marks to separate concerns which were engaged in putting

on the market practically the same products. It is obvious that the Baldwin people did not consider "Peaches" an infringement of "Peach Blow" because they have never raised that question. They did, however, interfere when "Peach Bloom" sought registration, and that interference was successful. It will also be observed that appellee raised no objection to appellant's use of the word "Peach Bloom" until after appellee's attempted purchase of the mark "Peach Blow" from Baldwin Perfumery Company.

We think there was no infringement.

Decree reversed.