**GEORGE LA MONTE & SON v. QUAYLE & SON CORPORATION et al.**

District Court, N. D. New York.

May 11, 1940.

Kenyon & Kenyon, of New York City (Douglas H. Kenyon, of New York City, of counsel), for plaintiff.

Hun, Parker & Reilly, of Albany, N. Y., (Earle W. Lawrence, of Albany N. Y., of counsel), for defendant.

COOPER, District Judge.

This is a motion by the defendant for the dismissal of an alleged cause of action contained in paragraphs No. 11 and 12 of the amended complaint herein.

The suit is for trade-mark infringement and unfair competition.

Paragraphs 11 and 12 of the amended complaint are as follows:

"11. That plaintiff for many years last past and long prior to the acts of defendants herein complained of, has used as a trade-mark for certain of its safety papers the name 'Safety Check,' that the said trade-mark has been used by plaintiff to a great extent and made known and advertised to the trade and the public as the trade-mark of plaintiff and as a means of identifying its safety paper; that the trade, including jobbers, lithographers, distributors, printers, banks and others in the trade, and the public, have been taught to and have used the said trade-mark as a means of identifying the safety paper of plaintiff; that the safety paper manufactured and sold by the plaintiff under its said 'Safety Check' trade-mark has been made of good materials and with greatest care and is of high quality; that said trade-mark has become and is an exceedingly valuable asset of the business of plaintiff; that the value of said trade-mark and/or the damages caused to plaintiff by the infringement complained of exceeds greatly the amount of Three Thousand Dollars ($3,000); that plaintiff has had the exclusive use of the aforesaid 'Safety Check' trade-mark except for the acts of the defendants herein; and that the validity of said trade mark and the exclusive rights of the plaintiff therein have been respected and acquiesced in by the trade and the public with practical unanimity except for the acts of the defendants herein.

"12. That the defendants and each of them, jointly and severally, have prior to the filing of the complaint herein, infringed upon and still are infringing upon the aforesaid 'Safety Check' trade-mark of plaintiff by making, distributing, selling, offering for sale and advertising safety paper other than safety paper of the plaintiff, under and using the name 'Safety Check' and so as to deceive and be likely to deceive the trade and the public into the belief that the safety paper of and sold by the defendants was the safety paper of the plaintiff; and that defendants and each of them

threaten to continue such infringing and unlawful acts."

These two paragraphs were inserted into the amended complaint by an order of the Court, the remaining paragraphs were re-numbered and certain additions were made in renumbering paragraphs 13 and 14 in the way of references to new paragraphs 11 and 12.

It will be seen from the foregoing paragraphs 11 and 12 that the plaintiff claims a common law trade-mark in the words "Safety Check" and that the words had been long used by plaintiff and had been recognized in the trade as indicating the paper manufactured by the plaintiff.

The goods are a particular kind of paper used for bank checks, drafts, etc.

The ground of the defendant's motion is that "Safety Check" is a descriptive term and merely states the characteristics of the paper to be used for checks and that there is nothing about these words which in law gives those words the legal status of a trade-mark.

On motion to dismiss a complaint or some part thereof, all the allegations of the complaint, or the part thereof involved, must be taken as true.

The defendants cite numerous decisions holding that words merely descriptive of characteristics of the product are not the subject of the trade-mark and cannot become the subject of a monopoly by any manufacturer of such goods. In other words, that no mere descriptive term can be a valid trade-mark.

If this were merely a suit for infringement of trade-mark, the defendant's position would be strong.

But this is also a suit for unfair competition and the weight of authority is that if such descriptive words, though not constituting a valid trade-mark, have been used so long, so extensively and so exclusively by a manufacturer who has used these words as a supposed trade-mark, as to identify such words with his product and thereby indicate the origin of the goods, in such case the words acquire a secondary meaning and will support an action for unfair competition against one or more competitors who fraudulently use the same or like words to deceive the public into believing his or their goods are the goods long made by the manufacturer using the words as a claimed trade-mark.

This is expressly held in Armstrong Paint & Varnish Works v. Nu-Enamel Corporation, 305 U.S. 315, 59 S.Ct. 191, 83 L. Ed. 195.

Much of this decision relates to the validity of the registration of the alleged trade-mark there involved.

But the Court held that regardless of the terms "Nu-Enamel" as a trade-mark, these words from their long use by the plaintiff had acquired a secondary meaning. The Court said, 305 U.S. at page 335, 59 S. Ct. at page 201, 83 L.Ed. 195:

"Remedies are afforded registrants under the 1920 act but these remedies are for 'owners,' and actual and exclusive use, short of the secondary meaning, does not qualify the registrant under the 1920 act as an owner. That ownership must be established by proof. Unless this ownership is established, no rights of action under the 1920 act for infringement exists. Here we have a secondary meaning to the descriptive term, 'Nu-Enamel.' This establishes entirely apart from any trade-mark act, the common law right of the Nu-Enamel Corporation to be free from the competitive use of these words as trade-mark or trade name.

"As was pointed out in the Davids Co. Case [Thaddeus Davids Co. v. Davids Mfg. Co., 233 U.S. 461, 34 S.Ct. 648, 58 L.Ed. 1046, Ann.Cas. 1915B, 322], in considering the ten-year clause of the 1905 act, 15 U.S. C.A. § 85, this right of freedom does not confer a monopoly on the use of the words. It is a mere protection against their unfair use as a trade-mark or trade name by a competitor seeking to palm off his products as those of the original user of the trade name. This right to protection from such use belongs to the user of a mark which has acquired a secondary meaning. He is, in this sense, the owner of the mark. * * *

"The rights of Nu-Enamel Corporation to be free of the competitive use of 'Nu-Enamel' may be vindicated, also, through the challenge of unfair competition, as set out in the bill. The remedy for unfair competition is that given by the common law. The right arises not from the trade-mark acts but from the fact that 'Nu-Enamel' has come to indicate that the goods in connection with which it is used are the goods manufactured by the respondent. When a name is endowed with this quality, it becomes a mark, entitled to protection.

The essence of the wrong from the violation of this right is the sale of the goods of one manufacturer for those of another."

The complaint, which must be taken as true fairly alleges that the defendants are palming off their goods in connection with the words "Safety Check" as the goods of the plaintiff.

In Paragraph 12 of the amended complaint it alleges that "defendants and each of them * * * are * * * making, distributing, selling and offering for sale and advertising safety paper other than the paper of the defendant and using the name "Safety Check" so as to deceive and be likely to deceive the trade and the public into the belief that the safety paper of and sold by the defendant was the safety paper of the plaintiff * * *."

Again in paragraph 15 it is alleged that defendants had "prior to the filing of the bill of complaint herein, and still are, competing unfairly with plaintiff by making, distributing, selling, and offering for sale, safety paper, bearing the trade-marks, markings and indicia of plaintiff * * * and by other unfair practices, to such an extent as has and is calculated to mislead and deceive customers and prospective customers of plaintiff and the trade and the public seeking to buy and use plaintiff's safety paper, and is leading and will lead such customers, buyers and the trade and public to believe that the safety paper of defendants is the safety paper of plaintiff; that said unfair acts have been done by the defendants and each of them intentionally and with the fraudulent purpose of misleading and deceiving the customers of plaintiff, the trade and the public as aforesaid * * *."

In Paragraph 11, the plaintiff sufficiently alleges that the so called trade-mark: "has been used by plaintiff to a great extent and made known and advertised to the trade and the public as the trade mark of plaintiff and as a means of identifying its safety paper; that the trade, including jobbers, lithographers, distributors, printers, banks and others in the trade, and the public, have been taught to and have used the said trade-mark as a means of identifying the safety paper of plaintiff * * *."

Among the numerous cases cited by the defendant is the Neva-Wet Corporation v. Never-Wet Processing Corporation, 277 N.Y. 163, 13 N.E.2d 755. In that case the Court of Appeals reversed the Appellate Division which affirmed the decision of the trial court. That case also recognizes that trade marks may acquire a secondary meaning but held that the defendant's use of the marks anticipated that of the plaintiff and had not been abandoned and likewise had a secondary meaning.

In Warner & Company v. Eli Lilly & Company, 265 U.S. 526, 44 S.Ct. 615, 68 L. Ed. 1161, the Court held that descriptive words could not be appropriated as trade marks but held that the defendant was guilty of unfair competition because the marks designated the product of the plaintiff.

A somewhat similar case is the Prophy-lac-tic Brush Co. v. Abraham & Straus, D.C., 11 F. Supp. 660.

The motion must be denied.