## SELCHOW & RIGHTER CO. v. WESTERN PRINTING & LITHOGRAPHING CO. et al.

### No. 110.

District Court, E. D. Wisconsin.

Oct. 15, 1942.

See, also, 112 F.2d 430.

Lecher, Michael, Whyte & Spohn and Gerrit D. Foster, all of Milwaukee, Wis. (Axel V. Beeken and Valdemar Beeken, both of New York City, of counsel), for plaintiff.

Foley & Brach and Jerome J. Foley, all of Racine, Wis. (Stern & Reubens and Arthur E. Farmer and Benjamin H. Stern, all of New York City, of counsel), for defendant.

DUFFY, District Judge.

This is an action based upon alleged trade-mark infringement and for unfair competition. Since 1869 plaintiff and its predecessors have used the name "Parcheesi" as a trade-mark on board and counter games manufactured and sold in interstate commerce. On October 8, 1918, plaintiff registered the trade-mark "Parcheesi" for games (No. 123033) and renewed same on September 6, 1938. The defendant Western Printing and Lithographing Company is the manufacturer and owns all of the capital stock of the defendant Whitman Publishing Company; the latter acts as sales agency. For convenience, both will be referred to hereinafter as the defendant.

The game "Parcheesi" was and is the principal item in plaintiff's business. Since 1910 plaintiff has expended in excess of $140,000 in advertising the various games which it sells, the principal emphasis being on "Parcheesi". Plaintiff sells to nearly 3,000 outlets in all parts of the country, including many wholesalers. "Parcheesi" is on sale in about 10,000 retail establishments.

For some years past the defendant, as well as other toy manufacturers, has produced and sold to the trade the same game under the name of "India". Plaintiff does not claim the exclusive use of the game, but does contend that it is entitled to the exclusive use of the name "Parcheesi" or any variation of the name which would deceive or confuse the public.

Prior to the commencement of this action, plaintiff had been producing a popular edition of the game "Parcheesi". The outer cover of the box was black, and in the center of the cover the following appeared in gold letters on a dark blue background:

"A Royal Game of India
"Parcheesi
"Popular Edition"

About April 1, 1939, the defendant brought out a game which was the same game as they had sold previously under the name of "India". Defendant's game had a dark blue cover and in the center thereof appeared:

"Parchesi
"A Game of India"

These letters were also in gold and, although in a somewhat different kind of type, they were about the same size as those used by plaintiff.

Plaintiff asked for a preliminary injunction. Before the hearing thereon and in its answer, defendant claimed to have

ceased the manufacture of the game as hereinbefore described, but asserted its right to manufacture, sell, and distribute the game under the name "Pachisi" but with the cover in a red or orange color with these words appearing in white letters:

"Whitman's
"Pachisi
"A Game of India"

The plaintiff filed an amended complaint asking that the defendant be restrained from using the word "Pachisi". A preliminary injunction was granted for the reasons appearing in Selchow & Righter Co. v. Western Printing & Lithographing Co. et al., D.C.Wis., 29 F.Supp. 569, affirmed in, 7 Cir., 112 F.2d 430. However, the testimony at the trial presented a somewhat different picture than that drawn by the plaintiff at the hearing for a preliminary injunction. At that hearing it appeared that the defendant was threatening to sell its game, which would retail at 25¢, in competition with plaintiff's game which retailed at $1.00. There was a deceptive likeness between the appearance of the game which defendant originally manufactured and distributed to the trade and the plaintiff's $1.00 game. However, at the trial it was satisfactorily established that defendant had withdrawn from the trade the game which was similar in appearance to plaintiff's dollar game. In addition the testimony showed that the plaintiff had distributed to the trade a 25¢ game of "Parcheesi" as early as February of 1939, and that this game had an entirely different outside dress and appearance than either the plaintiff's dollar game or defendant's 25¢ game. The testimony further disclosed that for years past the plaintiff has been selling games which retailed at $2.00 and $5.00 respectively, and which had a different appearance than either of the games presented at the hearing for the injunction.

For many years prior to 1869 a game similar to plaintiff's "Parcheesi" was played in India. The highest count that could be made in the Indian game was twenty-five, and the Hindustani or Hindi word for "twenty-five" sounded very similar to "Patcheesi", "Parcheesi", or "Pachisi". In fact, the game in India has come to be known as "Pachisi" and is often referred to as the national game of India.

Defendant first contends the trade-mark is invalid because of the manner of its registration. Essanar Company, Inc., applied for registration under the so-called "ten year clause" of the Trade-Mark Act of 1905, 15 U.S.C.A. § 81 et seq. This required a written declaration that applicant believes himself (or the corporation) "* * * to be the owner of the trade-mark sought to be registered, and that no other person, firm, corporation, or association, to the best of the applicant's knowledge and belief, has the right to use such trade-mark in the United States, either in the identical form or in such near resemblance thereto as might be calculated to deceive; that such trade-mark is used in commerce among the several States. * * *" The application shows that the president of Essanar stated: "The trade-mark has been continuously used in its business and the business of its predecessors in title since 1869. * * *" The evidence disclosed that on January 25, 1917, by a licensing agreement, the Essanar Company granted the exclusive right to make, sell, and use "Parcheesi" to Selchow and Righter Company.

John Hamilton originated plaintiff's game under the name of "Patcheesi", and in 1868 he sold his rights to E. B. Swift. In 1870 Swift sold his business and good will, and the entire rights to "Patcheesi" or "Parcheesi", to Elisha G. Selchow who formed a partnership with John H. Righter under the name and style of E. G. Selchow and Company. In 1916, after the deaths of John H. Righter and Elisha G. Selchow, the Essanar Company, Inc., was organized. The heirs of both deceased were the stockholders. Therefore, the stockholders of the two companies (licensor and licensee) were the same, although there was some slight difference in stock holdings. There was in fact a substantial identity of interests. Section 21 of the act provided "that no action or suit shall be maintained under the provisions of this act [subdivision of this chapter] * * * upon any certificate of registration fraudulently obtained." Surely under the circumstances here present, it cannot be said that the registration was fraudulently obtained.

Defendant next contends that plaintiff has abandoned its trade-mark by operation of law. In order not to unduly prolong this opinion, it will suffice to say that this contention has been examined but cannot be sustained.

Prior to the passage of the 1905 act, trade-mark registration under the federal statutes had been denied to words which consisted of a name of a party, or which were generic or descriptive of goods with which they were used, or which were merely geographical names, or which indicated the place of origin. Under Section 5 of the 1905 act, which included the so-called "ten year clause", this disability was removed with respect to trade-marks which had been used by the applicant or its predecessors, in foreign or interstate commerce, and which had been in actual and exclusive use as a trade-mark for ten years next preceding the passage of the act.

■ The 1905 act was not intended to change the common law principles of trade-marks. Thaddeus Davids Co. v. Davids, 233 U.S. 461, 470, 34 S.Ct. 648, 58 L. Ed. 1046. The courts have held that the only rights given to an owner of a mark registered under the ten-year clause which he did not have at common law are the right to institute suits for infringement in the federal courts irrespective of diversity of citizenship, and to eliminate the necessity for the complainant to show wrongful intent on the part of the defendant. Therefore, the tests applicable are the old common law rules of unfair competition with the exception of the requirement of proof of an attempt to defraud. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 335, 59 S.Ct. 191, 83 L.Ed. 195; Thaddeus Davids Co. v. Davids, supra, 233 U.S. 470, 34 S.Ct. 648, 58 L.Ed. 1046.

■ A reference to the Davids case, supra, is made in the opinion in the Armstrong case, supra, as follows at pages 335, 336 of 305 U.S., at page 201 of 59 S.Ct., 83 L.Ed. 195: " * * * As was pointed out in the Davids case, in considering the ten-year clause of the 1905 act, * * * this right of freedom does not confer a monopoly on the use of the words. It is a mere protection against their unfair use as a trade-mark or trade name by a competitor seeking to palm off his products as those of the original user of the trade name. This right to protection from such use belongs to the user of a mark which has acquired a secondary meaning. * * *"

Our consideration, therefore, is to determine whether the plaintiff is entitled under the common law to exclude the defendant from the use of the word "Pachisi".

■ A New York District Court considered the use of the word "Parcheesi" in Selchow v. Chaffee & Selchow Mfg. Co., C.C., 132 F. 996, where the predecessor of the plaintiff sought to restrain the defendant from using the name "Selchow". The court there found that the game manufactured by the plaintiff was an ancient Hindu game, the correct spelling of which, however, was not "Parcheesi", although it was virtually idem sonans with that word. The court held that in as much as the defendant had used the word "Parcheesi" for the purpose of deceiving the public in connection with the word "Selchow", defendant should be enjoined. But the court specifically limited its injunction so that the defendant was not precluded from selling the same game under its true and correct Hindi name. The court stated at pages 999, 1000 of 132 F.: " * * * It is not intended to hold that the defendant may not use the Hindoostanee name of this game in putting it on the market and selling it, for that everyone has the right to do. The one who first introduces a foreign game or article under its true name cannot monopolize either the game or the article or the name thereof, nor can such person, by slightly changing the name, prevent others lawfully making and selling the same game or article from selling it under its true name, for the alleged reason that it resembles the name such person saw fit to give it when introducing it. * * *"

Plaintiff contends that the game which it manufactures is not the Hindi game of "Pachisi" because the rules differ in certain respects. The Hindi game in evidence showed plaintiff's board is greatly similar. In each game the boards are cruciform, having a center square and four arms. In each instance the arms are divided into three pathways, and the number of divisions or sections in each pathway is practically the same. Each game is played by two to four persons, with playing pieces to be moved upon the board. The Hindi game uses cowries to determine the number of spaces which the pieces may be moved, while in plaintiff's modern version, dice are used. The primary object in each game is to get the players "Home". But such slight variations in the rules are not of importance. In our modern game of football the rules for "professional" football are in some respects different from those for college football. Yet no one would deny that both games are football. Furthermore, it is

somewhat inconsistent for plaintiff to argue that its game is not the Hindi game, for from the beginning of its manufacture by plaintiff and its predecessors, the game has been called "Parcheesi, The Royal Game of India" and "The Great Backgammon Game of India".

The testimony in the case at bar establishes that the correct spelling of the Indian name is "Pachisi". While it is true that this is the Indian word for "twenty-five", it is also the name of the Indian game which is similar to plaintiff's game of "Parcheesi" as well as to the defendant's proposed game. If we follow the reasoning of the Selchow v. Chaffee & Selchow Mfg. Co. case, supra, the defendant here has the right to use the name "Pachisi", the correct name for the game in the Hindi language, unless by so doing it would work a fraud upon the purchasing public by palming off on them something they believed to be the product of plaintiff.

■ In the well-known shredded wheat case (Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73), where unfair competition was alleged by the manufacturer of a breakfast food known as shredded wheat, the plaintiff conceded that it did not have the exclusive right to make shredded wheat, but it did claim the exclusive right to the trade name "Shredded Wheat", and the exclusive right to make pillow-shaped shredded wheat biscuits. In the opinion, Justice Brandeis stated at pages 116, 117 of 305 U.S., at page 112 of 59 S.Ct.: " * * * The plaintiff has no exclusive right to the use of the term 'Shredded Wheat' as a trade name. For that is the generic term of the article, which describes it with a fair degree of accuracy; and is the term by which the biscuit in pillow-shaped form is generally known by the public. Since the term is generic, the original maker of the product acquired no exclusive right to use it. * * * " With reference to the contention that many people associated the product with plaintiff's factory at Niagara Falls, the court said at page 118 of 305 U.S., at page 113 of 59 S.Ct.: " * * * But to establish a trade name in the term 'shredded wheat' the plaintiff must show more than a subordinate meaning which applies to it. It must show that the primary significance of the term in the minds of the consuming public is not the product but the producer. This it has not done. The showing which it has made does not entitle it to the exclusive use of the term shredded wheat but merely entitles it to require that the defendant use reasonable care to inform the public of the source of its product."

■ The plaintiff here has proved that buyers for large department stores and other like establishments have for years associated the name "Parcheesi" with the plaintiff company. But that does not hold true as to the general public, for it is very evident that an ordinary customer, going into a store and asking for the game "Parcheesi", has no information as to who might have manufactured and produced that game. Not one purchaser in a thousand would know or care whether Selchow and Righter Company was the manufacturer. The fact is that the public in general knows "Parcheesi" as a game and not as an article made by the plaintiff. The rule laid down in the case of Steem-Electric Corp. v. Herzfeld-Phillipson Co., 7 Cir., 118 F.2d 122, which went up from this court, is persuasive. The suit was brought to enjoin the infringement of plaintiff's design patent and its trade-mark "Steem-Electric", registered under the Trade-Mark Acts of 1905 and 1920, 15 U.S.C.A. § 81 et seq. and § 121 et seq. and to restrain unfair competition. The court said at page 125 of 118 F.2d: "Assuming that plaintiff's testimony in this respect furnishes some support for its contention that the trade-mark 'Steem-Electric' carried a secondary meaning, it must be remembered that its dealers and agents, exclusively engaged in purchasing and selling its product, would naturally associate with plaintiff the product sold under its trade-name. It does not follow that the public or any considerable portion thereof would be thus impressed. * * * " The court said further at page 126 of 118 F.2d: " * * * So we think it must be concluded that the mere fact that a trade-name is descriptive is not sufficient to invalidate it. Its validity depends upon whether it has acquired a secondary meaning—that is, if, in the minds of the public, it means the producer rather than the product. * * * "

■ We are of the opinion that the plaintiff does not have the exclusive right to use the word "Pachisi", nor to prevent the defendant from the use of such name, especially when the color and dress of the package is entirely different than that which has been used by the plaintiff and when, in addition, the name of the manu-

facturer clearly appears thereon. As defendant discontinued the use of the name "Parchesi" prior to the time of the trial and has indicated that it has no intention of using that name in the future, the temporary injunction heretofore entered may be vacated, and judgment in this action will go for the defendant.