FIELDCREST MILLS, INC., Plaintiff,

v.

Basil J. COURI, George J. Couri and David E. Murad, Individually and as Copartners Doing Business as Couri, Murad & Co., and Couristan, Inc., Defendants.

United States District Court
S. D. New York.
June 27, 1963.

Liddy, Sullivan, Hart, Daniels & Stemple, New York City, Joe E. Daniels, New York City, W. B. Lucas, Spray, N.C., and Sylvester J. Liddy, New York City, of counsel, for plaintiff.

Gallop, Climenko & Gould, New York City, George Trosk and Milton S. Gould, New York City, of counsel, for defendants.

COOPER, District Judge.

This is an action for trademark infringement under 15 U.S.C.A. § 1051 et seq., and for unfair competition in which the plaintiff seeks injunctive relief, an accounting and damages. Jurisdiction rests on 15 U.S.C.A. § 1121 and 28 U.S.C.A. § 1338(a).

THE MARK "KARASTAN"

Plaintiff, Fieldcrest Mills, Inc., a Delaware Corporation, and its predecessors have been engaged in the manufacture and sale of domestic rugs and carpets in the United States since 1928 under the trademark "Karastan". The gravamen of the alleged infringement and unfair competition is the use by defendants of the trademark "Couristan" in connection with rugs imported and sold by them.

"Karastan" was first used by plaintiff's predecessor in title on April 1, 1928, and a trademark was issued on April 15, 1930. The trademark relied on by plaintiff in this action became a reg-istered mark in the United States Patent Office on September 28, 1948. By assignment plaintiff became the owner of the trademark on September 29, 1953, said assignment having been recorded in the United States Patent Office on November 3, 1953.

"Karastan" was first used on rugs woven on power looms in the United States. Their patterns and colors were traced or "adapted" from hand-made Oriental rugs. As business expanded the mark was affixed to broadloom carpets. At all times merchandise bearing the mark "Karastan" was power loomed in this country.

Over the years the sales of "Karastan" rugs increased substantially. In recent years the annual sales totaled more than $15,000,000 and advertising costs annually (both directly and under a co-operative plan) was in excess of $600,000.

Plaintiff has clearly proven its ownership of the trademark "Karastan" and its right to use that mark.

The contention of defendants that the mark must fall because it is merely descriptive is untenable. The trademark neither stems from any specific geographic area nor is it descriptive of rugs. Though the suffix "stan" is frequently used in the nomenclature of Oriental rugs, the word "Karastan", when considered as a whole (as it must be), is at most merely suggestive. Cf. National Lead Company v. Wolfe, 223 F.2d 195 (9th Cir. 1955); LaTouraine Coffee Co. v. Lorraine Coffee Co., 157 F. 2d 115 (2d Cir. 1946), cert. denied, 329 U.S. 771, 67 S.Ct. 189, 91 L.Ed. 663 (1946). Suggestiveness of a trademark which falls short of descriptiveness has consistently been held not to affect its validity. See, e. g., Van Camp Sea Food Co. v. Alexander B. Stewart Organizations, 50 F.2d 976 (C.C.P.A.1931); Le Blume Import Co. v. Coty, 293 F. 344 (2d Cir. 1923).

Furthermore, even if there were some offensively descriptive connotation in the trademark "Karastan", it has been used so long and extensively (as pointed out

above) by plaintiff and its predecessors that it has acquired an associative secondary meaning which would make it a valid mark at this time. See, e. g., Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 413–414, 36 S.Ct. 357, 60 L.Ed. 713 (1916); 1 Nims, The Law of Unfair Competition and Trade-Marks, 4th Ed. 1947, Sec. 37.

## THE MARK "COURISTAN"

The first business association of defendants took place in 1926 when Basil J. Couri and Aleer Couri formed the firm of Couri Brothers. Each had been in the rug business before then, and started this concern to import and sell rugs. In later years the defendants George J. Couri and David E. Murad joined the firm and it was variously known as "Couri Brothers, Inc.", "David E. Murad" and "Couri, Murad & Co." On October 28, 1956, the individual defendants incorporated under the laws of New York as "Couristan, Inc."

In 1926, when the first firm began operations, Aleer Couri devised the name "Couristan" which was to be affixed to the hand woven imported rugs. This mark was composed of the family name "Couri" and the frequently used suffix, "stan".

In 1926 the trademark "Couristan" was placed by Couri Brothers on the first rugs they imported—a few shipments of Sparta rugs from Smyrna. About 1926 or 1927 the firm began importing Indian rugs and the mark appeared on labels affixed to the back of the rugs.

The use of the trademark "Couristan" by defendants, or some of them, on imported rugs has continued to this day. For many years it was used only on genuine, hand-made Oriental rugs. After the formation of the corporation, Couristan, Inc., in 1956, it was placed on hand-made Japanese hooked and braided rugs.

The evidence at the trial, both qualitatively and quantitatively, clearly showed the continuous use of the trademark "Couristan" since 1926. Although no documentary evidence was offered to prove such use, the uncontradicted testimony of the witnesses was convincing and unambiguous. The majority of the witnesses were completely disinterested: buyers, salesmen and officers of department stores and other concerns, importers, a cleaner and a housewife. The burden of proof on this score has been met.

■ The test used to determine continuous prior use is not the volume of sales or advertising or the degree of familiarity of the public with the mark. Here we have two parties, each well known in its own sphere—one a large corporation with substantial funds available for advertising, the other a family business operating on a smaller scale but managing to bring its merchandise to the attention of the public constantly.

The extent of defendants' use of the trademark "Couristan" obviously varied with the normal vicissitudes of business. When demand for imported rugs was large, the use of "Couristan" was expectedly greater; when business fell off, the defendants' use of the "Couristan" label decreased correspondingly.

Plaintiff concedes that defendants had a right to use their family name, "Couri", in their business, either as a partnership or corporation. Cf. I Nims, supra, Sec. 67 et seq. Plaintiff contends, however, that by combining the name "Couri" with the suffix "stan", defendants have created a corporate name which will cause confusion with the plaintiff's trademark.

■ It is clear that one cannot use his surname in a business or in a corporate name if the use will infringe upon another's prior right and confusion will result. I Nims, supra, Sec. 71, 90. However in the instant case the word "Couristan" had been used even prior to "Karastan" and though perhaps less well known, had constantly come to the attention of the buying public. The defendants merely adopted as their corporate name a trademark used by them since 1926 and quite well established in the rug industry.

From the evidence, fairness dictates the conclusion that at no time have the defendants used their name in the corporate title to mislead or deceive the public in an attempt to pass off their rugs as those of the plaintiff. cf. Thaddeus Davids Co. v. Davids, 233 U.S. 461, 470, 34 S.Ct. 648, 58 L.Ed. 1046 (1914); John T. Lloyd Laboratories, Inc. v. Lloyd Bros. Pharmacists, 131 F.2d 703, 707 (6th Cir. 1942).

## THE LIKELIHOOD OF CONFUSION

A fundamental of a trademark infringement action is that there is a similarity between the marks which is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C.A. § 1114(1) (a).

In determining whether a likelihood of confusion exists, the court must make a determination based on the facts of the particular case.

"Each case alleging trademark infringement must be judged on its own facts, and citation of authorities is not very helpful, except insofar as they show the general pattern." Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., 281 F.2d 755 (2d Cir. 1960).

The marks "Karastan" and "Couristan" must be viewed as a unit in determining likelihood of confusion. This court finds that these marks are not so similar as to create a likelihood of confusion.

Taking all factors into consideration (see, e. g., Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538 [2d Cir. 1956]) plaintiff has failed to show by a fair preponderance of the credible evidence that there is such a likelihood of confusion.

Indeed there is proof of what approaches an affirmative showing of the absence of confusion. The rugs of both parties have been sold almost side by side in retail stores for years, and during this time their showrooms and offices located in the same area. In fact except for two isolated instances, there has been no evidence of confusion, and even these two incidents hardly carry any weight.

This court is well aware that the test in a trademark infringement action is the likelihood of confusion, and that evidence of actual confusion is not necessary. But the fact that in the many years during which both these marks were used, " * * * no one appears to have been actually deceived is strongly probative that there is no likelihood of deception or confusion." Societe Anonyme, etc. v. Julius Wile Sons & Co., 161 F.Supp. 545, 548 (S.D.N.Y. 1958).

Another consideration in ascertaining likelihood of confusion is the nature of the articles to which the marks are attached. Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., supra; Chester Barrie, Ltd. v. The Chester Laurie, Ltd., 189 F.Supp. 98 (S.D.N.Y. 1960). These rugs are not low-priced, mass produced articles. Their purchase involves matters of personal taste requiring a high degree of sophistication on the part of the buyer. Societe Anonyme, etc. v. Julius Wile Sons & Co., supra.

Indeed the business records of Karastan show a steadily increasing volume of sales. This is corroborative of the total picture adduced from the evidence, namely, that each of the parties is well known for particular products offered for sale (though Karastan is on a larger scale) without any confusion resulting between the two.

As already indicated there has been no showing that the defendant attempted to palm off their products or intended to deceive the public by capitalizing on the plaintiff's reputation. cf. Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., supra.

## THE FEDERAL TRADE COMMISSION ORDER

While our determination already announced does not require a ruling with respect to the alleged offenses committed by the plaintiff in carrying out the provisions of the FTC order, this Court

would be remiss if it failed at least to comment on the state of the record with respect to this challenge developed by defendants. At the very least, the record shows a passive resistance of a constant nature to compliance with the terms of the FTC order. Much more of an affirmative character could and should have been done, and remains to be done, if the FTC's prohibitive and injunctive provisions are to be fulfilled both in letter and spirit.

## UNFAIR COMPETITION

In addition to its action for trademark infringement the plaintiff has alleged a separate claim of unfair competition.

■ Trademark infringement is a subdivision of the broader law of unfair competition, United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918), and unfair competition is governed by essentially the same principles as trademark infringement. American Auto Ass'n v. Spiegel, 205 F.2d 771 (2d Cir. 1953), cert denied, 346 U.S. 887, 74 S.Ct. 138, 98 L.Ed. 391 (1953).

■ Against the factual background herein and the findings of no trademark infringement, the plaintiff's claim of unfair competition must also fall.

## THE COUNTERCLAIMS

In addition to the defenses set forth in their answer, the defendants have pleaded several counterclaims, the underlying theory of which is to enjoin and restrain the plaintiff from using the trademark "Karastan".

The defense of prior use, descriptive nature of the mark, unclean hands, etc., have all been discussed heretofore. Sufficient as they may be to vitiate the plaintiff's claim, they provide no factual or legal basis for the remedies sought in the counterclaims.

Based on the entire record of proof, and for the reasons already set out, no infringement on the part of either party is present.

## THE COURT'S DETERMINATION

The plaintiff's complaint is dismissed. The defendant's counterclaims are dismissed.

This opinion shall constitute the Court's findings of fact and conclusions of law.

So ordered.